**Tommy E. BUSH, Plaintiff,**

v.

**CARRIER AIR CONDITIONING, Defendant.**

**No. 6:96 CV 296.**

United States District Court, E.D. Texas, Tyler Division.

Sept. 30, 1996.

Tommy E. Bush, Tyler, TX, pro se.

Stephen Cass Weiland, Jackson & Walker, Dallas, TX, for defendant.

### MEMORANDUM OPINION

JUSTICE, District Judge.

#### I. *Introduction*

On April 30, 1996, Carrier Air Conditioning ("Carrier"), defendant in the above-enti-

tled and numbered civil action, filed a motion for dismissal. After reviewing the briefs of the parties, this court found that the motion for dismissal should be treated as a motion for summary judgment under Fed.R.Civ.P. 56. Both sides were given twenty days "to present all material made pertinent" to a summary judgment motion. Carrier was directed to tender to the court copies of the relevant portions of the collective-bargaining agreement between Carrier and the plaintiff, Tommy E. Bush, and copies of all records of grievances filed by Bush in 1995 and 1996, including the responses to the grievances or any arbitration decisions. Such documents have been filed. For the following reasons, it is found that the summary judgment motion should be denied.

## II. *Background*

Tommy Bush is a former employee of Carrier Air Conditioning ("Carrier"), at Carrier's plant in Tyler, Texas, which manufactures commercial air conditioning units.[1] Bush is also a former member of Local Union 337 of the Sheet Metal Workers' International Association ("the Union"). A collective-bargaining agreement ("CBA") between Carrier and the Union governed his employment.

In February 1995, during the course of his employment, Bush injured his back. He sought treatment from several doctors over the next month, and one of these doctors placed Bush on a medical leave of absence. The company apparently put Bush under surveillance, and undercover investigators videotaped him performing physical activities allegedly inconsistent with the back injury Bush claimed to have suffered. Also, investigators allegedly observed Bush working at a restaurant he owned—an establishment known as "Mama's Kitchen"—during the time that he was on medical leave. Carrier terminated Bush for giving a false reason for obtaining a leave of absence, in violation of the terms of the CBA.

Relevant excerpts of the CBA entered into between Carrier and Local Union 337 are attached to Defendant's Supplemental Briefing on Motion for Summary Judgment ("Defendant's Supplemental Briefing"). Article XV of the CBA provides for a three-step procedure for the presentation of grievances. Each step "shall be followed in due order or the grievance shall be considered waived." In Step One, "[a]n aggrieved employee shall orally discuss the grievance with his foreman with or without a Zone Steward being present in an effort to satisfactorily settle the grievance." In Step Two, "[t]he aggrieved employee shall submit the grievance in writing to his foreman within three (3) working days from the time the grievance is alleged to have occurred except that grievances arising from discharge cases must be processed within two (2) working days." Finally, in Step Three, "[t]he Union representative and/or the Chief Steward shall submit the grievance in writing within three (3) working days to the Personal Manager or to his designated representative." After proceeding through the grievance process, if further relief is desired, "the Union may submit the dispute to arbitration," pursuant to Article XVI of the CBA. The decision of the arbitrator is "final and binding upon both parties." On April 1, 1995, presumably after orally discussing his grievance with his foreman, Bush filed a written grievance pursuant to Step Two of the CBA grievance procedure. The grievance alleged that Bush was wrongfully terminated because his leave of absence was approved by a doctor and the personnel department. Bush alleged that the termination violated Article XIX of his contract—the company's leaves of absence rules. Carrier denied relief. The grievance then proceeded to Step Three and, after Carrier again denied relief, the dispute was submitted to arbitration.[2] The issue presented for arbitration was as follows: "Whether or not Mr. Bush was properly discharged under the collective bargaining agreement." The arbitrator found insufficient evidence that Bush had misrepresented his medical condition. The arbitrator concluded that Carrier did not have just cause to terminate

---

1. Most of the background facts in this section are taken from the arbitrator's decision, attached as exhibit A to the defendant's motion to dismiss.

2. A copy of the arbitration decision is attached as an exhibit to the plaintiff's response to the defendant's motion to dismiss ("plaintiff's response").

Bush and awarded Bush reinstatement with full seniority and accrued benefits.

On January 3, 1996, Bush filed a complaint with the EEOC, alleging that Carrier had discriminated against him on the basis of his race, and cited the events surrounding his March 1995 medical leave of absence.[3] Bush apparently attempted to return to work in accordance with the arbitrator's award, but was denied employment because Carrier felt Bush sought restrictions above and beyond those prescribed by his doctor, and also because Bush sought time off to seek further medical attention. Bush filed a second grievance with Carrier on January 31, 1996, stating that he had been "denied employment per contract." Bush alleged that Carrier was wrongfully denying him light duty work and time off to seek medical attention. This grievance was denied and proceeded at least to step three of the CBA's grievance procedure.[4] No evidence of arbitration appears in the record. Bush, proceeding *pro se*, filed this action on March 29, 1996, alleging that Carrier had discriminated against him on the basis of his race, in violation of Title VII of the Civil Rights Act of 1964.[5]

Carrier moves for summary judgment, pursuant to Fed.R.Civ.P. 56(c), for failure to exhaust administrative remedies. Specifically, Carrier argues that the CBA governing Bush's employment provides grievance and arbitration procedures for race discrimination claims, and that Bush must utilize these procedures before bringing a Title VII action in federal court. Article XXXIIA of the CBA, a copy of which is attached to the Defendant's Supplemental Briefing, prohibits discrimination by Carrier against its employees on the basis of race—a prohibition against racial discrimination similar to that contained in Title VII. Carrier contends that because Bush has failed to allege racial discrimination in any of his past grievances, he may not raise the claim here. Carrier also argues in the alternative that, because Bush's racial discrimination claim pertains to the same acts which were the subject of his April 1, 1995, grievance, Bush is estopped from bringing a Title VII suit after having prevailed in the grievance.

Bush, proceeding *pro se*, argues that he has attempted to allege racial discrimination in his past grievances. Bush contends that on March 31, 1995, he asked the president of the local union to include a discrimination claim in the April 1, 1995, grievance. Moreover, in his Supplemental Briefing on Motion for Summary Judgment, Bush alleges that the union was involved in the discrimination against Bush when, on the day of the arbitration of his April 1, 1995, grievance, the union president lost all of his exhibits.

### III. *Legal Standard*

Summary judgment is proper under Fed. R.Civ.P. 56(c), "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). The substantive law underlying the claims in issue identifies which facts are material. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). When assessing a motion for summary judgment, the court must make all factual inferences in favor of the party opposing the motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986); *Hansen v. Continental Ins. Co.*, 940 F.2d 971, 975 (5th Cir.1991). Often, summary judgment allows the court to dispose entirely of one or more claims within the case. However, a court may also grant partial summary judgment by identifying any undisputed issues or material fact. Such facts are then deemed established for trial. Fed.R.Civ.P.

---

**3.** This complaint is attached as an exhibit to plaintiff's response.

**4.** Bush's grievance, and Carrier's response at the second and third steps of the grievance procedure, are attached to plaintiff's response.

**5.** Since filing this lawsuit, Bush has filed a third grievance. While the allegations in this grievance are not clear, it appears Bush alleges that Carrier wrongfully withheld his benefits.

56(d); *see Belinsky v. Twentieth Restaurant, Inc.*, 207 F.Supp. 412 (S.D.N.Y.1962).

## IV. *Analysis*

▮ The legal issue presented by this summary judgment motion can be summarized as follows: Was Bush required to submit his Title VII claim to the grievance-arbitration procedure provided for in the CBA governing his employment? Carrier argues that Bush failed to submit his statutory claim to the grievance-arbitration procedure, and is therefore barred from raising this claim in federal court. Bush, on the other hand, contends that he did follow the grievance-arbitration procedure and that, therefore, this court is not precluded from hearing his Title VII claim.

Bush asserts that on March 31, 1995, he asked the president of the local union to include his discrimination claim in the April 1, 1995, grievance. A copy of the grievance form that was actually filed with Carrier, however, reveals that a discrimination claim was not raised in the grievance. In his grievance, Bush alleged only that Carrier had violated Article XIX of the CBA, which governs leaves of absence; he did not allege that the Carrier had violated Article XXXII, the anti-discrimination provision of the CBA. Moreover, when the grievance proceeded to arbitration, even though the issue presented was phrased in broad terms—whether or not Bush was properly discharged under the CBA—the arbitration decision, which is twenty-six pages long, never mentions allegations of racial discrimination. The decision focuses only on one issue: whether Bush gave false reasons for obtaining medical leaves of absence, and thus, whether the company had "just cause" for discharging Bush. Likewise, no discrimination claim was raised in the January 31, 1996, grievance or Bush's most recent, July 19, 1996, grievance. Accordingly, even if Bush is correct in asserting that he directed the union to file a discrimination claim against Carrier, this claim was never filed, or at least this court has not been presented with any evidence that such claim was filed. Even after drawing all factual inferences in favor of Bush, this court cannot find that he filed his dis-

crimination claim against Carrier pursuant to the CBA's grievance-arbitration procedure.

▮ However, as discussed below, Bush's failure to raise his Title VII claim pursuant to the grievance-arbitration procedure provided for in the CBA is not fatal to his case. Because this court finds that the CBA's mandatory grievance-arbitration procedure does not cover Title VII claims, Bush is not foreclosed from seeking relief from this court. Moreover, even if the CBA did cover Title VII claims, this court concludes such an agreement is invalid; a union may not waive an employee's right under Title VII to bring a claim in federal court.

This court, in reaching its decision, is bound by the Supreme Court's decision in *Alexander v. Gardner–Denver Co.* 415 U.S. 36, 94 S.Ct. 1011, 39 L.Ed.2d 147 (1974). *Gardner–Denver* involved a CBA similar to the one governing Bush's employment. The CBA included an anti-discrimination provision, which provided that "there shall be no discrimination against any employee on account of race, color, religion, sex, national origin, or ancestry." *Id.* at 39, 94 S.Ct. at 1015. The CBA also provided that disputes had to be submitted to a multi-phased grievance-arbitration procedure. After examining the legislative history of Title VII and the policies behind preserving the right of an employee to choose a judicial forum for a Title VII claim, a unanimous Supreme Court held that a labor union may not waive an employee's right to file a Title VII suit in court. The Court wrote:

> . . . [W]e think it clear that there can be no prospective waiver of an employee's rights under Title VII. It is true, of course, that a union may waive certain statutory rights related to collective activity, such as the right to strike. These rights are conferred on employees collectively to foster the processes of bargaining and properly may be exercised or relinquished by the union as collective-bargaining agent to obtain economic benefits for union members. Title VII, on the other hand, stands on plainly different ground; it concerns not majoritarian processes, but an individual's right to equal employment opportunities. Title VII's strictures are absolute and represent

a congressional command that each employee be free from discriminatory practices. Of necessity, the rights conferred can form no part of the collective-bargaining process since waiver of these rights would defeat the paramount congressional purpose behind Title VII. In these circumstances, *an employee's rights under Title VII are not susceptible of prospective waiver.*

*Id.* at 51–52, 94 S.Ct. at 1021 (internal citations omitted) (emphasis added).

In reaching its holding, the Court thus placed special emphasis on the dangers collective-bargaining agreements pose for individual statutory rights and the unsuitability of labor arbitration to the resolution of statutory disputes. When civil rights statutes are at issue, these concerns are magnified, for "Congress [has] indicated that it considered the policy against discrimination to be of the 'highest priority.'" *Id.* at 47, 94 S.Ct. at 1019.

The Supreme Court reached similar holdings in later cases involving different statutes. *Barrentine v. Arkansas–Best Freight System, Inc.*, 450 U.S. 728, 101 S.Ct. 1437, 67 L.Ed.2d 641 (1981); *McDonald v. City of West Branch, Mich.*, 466 U.S. 284, 104 S.Ct. 1799, 80 L.Ed.2d 302 (1984). In *Barrentine,* the Supreme Court held that, regardless of what a CBA provides, an employee has the right to bring a Labor Standards Act claim in federal court. The Court recognized the federal policy behind encouraging arbitration of disputes, but concluded that an employee's specific substantive rights would be intolerably compromised by mandatory arbitration of claims "arising out of a statute designed to provide minimum substantive guarantees to individual workers." 450 U.S. at 737, 101 S.Ct. at 1443.

In *McDonald,* the employee, after unsuccessfully arguing in arbitration that his employer did not have cause to discharge his employment, filed a § 1983 action in federal court alleging that he was discharged in violation of his First Amendment free speech

right. 466 U.S. at 286, 104 S.Ct. at 1800–01. Again, the Court, contrary to the employer's argument, held that a CBA cannot bar an employee from seeking relief in federal court. And again, the Court based its holding in large part on the conclusion that "an arbitration proceeding cannot provide an adequate substitute for a judicial trial" in protecting individual rights. *Id.* at 292, 104 S.Ct. at 1804.

Despite the Court's holdings in *Gardner–Denver, Barrentine,* and *McDonald,* the defendant, in support of its summary judgment motion, asks this court to rely on a more recent Supreme Court case, *Gilmer v. Interstate/Johnson Lane Corp.,* 500 U.S. 20, 111 S.Ct. 1647, 114 L.Ed.2d 26 (1991). In *Gilmer,* the plaintiff signed an application to register as a securities representative, agreeing "to arbitrate any dispute, claim, or controversy" arising between him and his employer. *Id.* at 23, 111 S.Ct. at 1650. After he was dismissed, the plaintiff brought an Age Discrimination in Employment Act ("ADEA") claim against his employer in federal court. The Supreme Court concluded that the arbitration agreement contained in his application waived the employee's right to bring a statutory action in federal court and therefore barred the plaintiff's ADEA suit.

This court finds that *Gilmer* does not support the defendant's motion for summary judgment. *Gardner–Denver* involved an arbitration clause contained in a *collective-bargaining agreement,* while *Gilmer,* in contrast, involved an arbitration clause contained in an *individual employment contract* between a stockbroker and his employer. Contrary to what the defendant argues, nothing in *Gilmer* suggests that a union through a CBA can waive an employee's right to litigate a Title VII claim in federal court.[6] *Gilmer,* while allowing an employee to be bound by a individual employment contract to arbitrate, made it clear that its holding was limited to these types of contracts and that *Gardner–Denver* continues to govern in the context of

---

**6.** The Court in *Gilmer* also recognized that even in the context of individual employment contracts, a waiver of statutory rights will not always be upheld where there is evidence of fraud or a

significant disparity in bargaining power between the parties. *Gilmer,* 500 U.S. at 33, 111 S.Ct. at 1655–56.

collective-bargaining agreements. Moreover, since *Gardner–Denver* and *Gilmer* were decided, the Court has noted the harmony between the two decisions:

> In holding that an agreement to arbitrate an Age Discrimination in Employment Act claim is enforceable under the Federal Arbitration Act, *Gilmer* emphasized its basic consistency with our unanimous decision in [*Gardner–Denver* ].

*Livadas v. Bradshaw*, 512 U.S. 107, —— n. 21, 114 S.Ct. 2068, 2080 n. 21, 129 L.Ed.2d 93 (1994). Accordingly, in the context of collective-bargaining agreements, *Gardner–Denver* is still the law of the land that this court is obligated to follow.

■ The Supreme Court went to great lengths in *Gilmer* to contrast the differences between collective-bargaining agreements and individual employment contracts. The CBAs in *Gardner–Denver, Barrentine,* and *McDonald,* unlike the individual employment contract in *Gilmer,* implicated

> the difference between contractual rights under a collective-bargaining agreement and individual statutory rights, the potential disparity in interests between a union and an employee, and the limited authority and power of labor arbitrators.

*Gilmer,* 500 U.S. at 35, 111 S.Ct. at 1657. *Gilmer* recognized that, given the majoritarian nature of collective bargaining, "the interests of the individual employee may be subordinated to the collective interests of all employees in the bargaining unit." *Id.* at 34, 111 S.Ct. at 1656 (quoting *Gardner–Denver,* 415 U.S. at 58 n. 19, 94 S.Ct. at 1024). As a result, a CBA could very well lower the protection against race discrimination provided to an employee under Title VII. In addition, CBAs produce a unique "tension between collective representation and individual statutory rights, a concern not applicable to [the individual employment contract in *Gilmer* ]." *Id.* at 35, 111 S.Ct. at 1657. For example, in most CBAs, including the CBA governing Bush's employment, an employee is represented by his union in the grievance-arbitration proceeding, and the union has exclusive control over whether an individual grievance is presented to arbitration. If a union chose not to process a claim,[7] under the defendant's extension of *Gilmer,* an employee would have no forum in which to raise his statutory claim. This outcome is especially troublesome in the context of race discrimination, where, as in this case, the plaintiff alleges that the union is also engaged in acts of discrimination. Moreover, *Gilmer* noted that labor arbitration differs significantly from arbitration in other contexts. Labor arbitrators have the authority "only to resolve questions of contractual rights," not statutory rights. *Id.* at 34, 111 S.Ct. at 1656.

In summary, nothing in *Gilmer* suggests that the Court abandoned its concern with the inequities involved in forcing an employee to depend on a CBA for protection of his civil rights. The holding in *Gardner–Denver*—that a union may not waive an employee's right to bring a Title VII claim in federal court—is binding on this court in resolving the defendant's summary judgment motion. This conclusion has been reached by numerous other lower courts. *See, e.g., Tran v. Tran,* 54 F.3d 115, 117 (2nd Cir.1995); *Humphrey v. Council of Jewish Federations,* 901 F.Supp. 703, 709–10 (S.D.N.Y.1995); *Jackson v. Quanex Corp.,* 889 F.Supp. 1007, 1010–1011 (E.D.Mich.1995); *Randolph v. Cooper Industries,* 879 F.Supp. 518, 520–522 (W.D.Pa.1994); *Block v. Art Iron, Inc.,* 866 F.Supp. 380, 384–387 (N.D.Ind.1994); *Griffith v. Keystone Steel & Wire Co.,* 858 F.Supp. 802, 804 (C.D.Ill.1994); *Claps v. Moliterno Stone Sales, Inc.,* 819 F.Supp. 141, 145–147 (D.Conn.1993).

At least one lower court has taken a more expansive view of the holding in *Gilmer* by extending its holding to cover arbitration clauses contained in collective-bargaining agreements. *Austin v. Owens–Brockway Glass Container, Inc.,* 78 F.3d 875 (4th Cir. 1996). In *Austin,* the plaintiff filed suit in federal court against her employer, alleging violations of Title VII and the Americans with Disabilities Act ("ADA"). The plaintiff's employment was governed by a CBA providing for mandatory arbitration. The Fourth

---

**7.** As the Court in *Barrentine* recognized, "even if the employee's claim were meritorious, his union might, without breaching its duty of fair representation, reasonably and in good faith decide not to support the claim vigorously in arbitration." 450 U.S. at 742, 101 S.Ct. at 1445–46.

Circuit stated that *Gilmer* "made clear that agreements to arbitrate statutory claims are enforceable." *Id.* at 880, and thus held that the plaintiff's failure to process her statutory claims under the grievance-arbitration procedure in the governing collective-bargaining agreement barred her from filing these claims in federal court. *Id.* at 885.

As discussed above, this court rejects the Fourth Circuit's extension of *Gilmer.* Moreover, even if this court were to follow the Fourth Circuit's holding in *Austin,* Bush would not be precluded from bringing his Title VII claim in federal court. Unlike the agreements in *Gilmer* and *Austin,* the CBA governing Bush's employment does not provide that his Title VII claims, or any other statutory claims, for that matter, are subject to compulsory arbitration.[8] Furthermore, the grievance forms provided to Carrier employees for processing a Step Two Grievance allow for an employee to raise only a contract-based claim. *See Exh. C.* When an employee files a grievance, he is directed to provide the Contract Provision(s) Alleged to Have Been Violated (Section and Article). There is nothing in the Step Two Grievance form to indicate that an employee can raise a statutory-based claim.

## V. *Conclusion*

In summary, as the Court itself made clear in *Gilmer,* the Court's holdings in *Gardner–Denver* and its progeny, *Barrentine* and *McDonald,* remain unaltered. These cases provide that an employee such as Bush is not barred by a CBA from bringing a Title VII claim in federal court.

Accordingly, it is **ADJUDGED** that the defendant's motion for summary judgment shall be, and is hereby, **DENIED.**

---

8. The only kinds of claims the CBA sets out as subject to the grievance-arbitration procedure are conflicts with a proposed company rule or regulation and challenges to the evaluation of a new job. *Articles IV.B. and VI.D.* The CBA provision setting out the grievance-arbitration procedure states, "Grievances shall be processed in the following order, and each step of such grievances shall be followed in due order or the grievance shall be considered waived." Yet, the CBA does not define the term "grievance." The term "grievance" in labor law, however, is commonly understood as referring to a *contract-based dispute. See, e.g., Hawaiian Airlines, Inc. v. Norris,* 512 U.S. 246, ——, 114 S.Ct. 2239, 2244, 129 L.Ed.2d 203 ("The use of 'grievance' to refer to a claim arising out of a CBA is common in the labor-law context in general.").