David L. BRIGHT, Plaintiff,

v.

**NORSHIPCO AND NORFOLK SHIP-BUILDING & DRYDOCK CORPORATION, Defendants.**

Civil Action No. 2:96cv985.

United States District Court,
E.D. Virginia,
Norfolk Division.

Jan. 28, 1997.

Michael F. Imprevento, Breit, Drescher & Breit, Norfolk, VA, and Mark C. Brodeur and J. Joseph Reina, Brodeur & Reina, P.C., Dallas, TX, for plaintiff David L. Bright.

Ronda L. Brown and Thomas Michael Lucas, Vandeventer, Black, Meredith & Martin, Norfolk, VA, for defendants Norshipco and Norfolk Shipbuilding & Drydock Corp.

*OPINION AND ORDER*

DOUMAR, District Judge.

Mr. Bright is suing his former employers, the defendants in this case, for alleged discrimination resulting from his disability. He alleges violations of the Americans with Disabilities Act, 42 U.S.C. §§ 12101 *et seq.*, (the "ADA"), along with two pendent state claims. Defendants have responded with a "Motion to Dismiss or Alternatively Motion to Stay the Action and Compel Arbitration." The alternative motions contend that the collective bargaining agreement between Norshipco and Mr. Bright's union requires Mr. Bright to submit his ADA claim to the binding grievance and arbitration procedures set forth in the agreement. The Court agrees with the defendants. Therefore, because Mr. Bright has not submitted his claim to the necessary grievance/arbitration procedures, the Court will dismiss without prejudice Mr. Bright's ADA claim. Further, because the Court consequently has no supplemental jurisdiction over Mr. Bright's state claims, the Court also will dismiss without prejudice Mr. Bright's state claims.

**I. Background**

Mr. Bright had been employed by defendants since 1979 as a rigger. In 1992, a workplace accident resulted in the amputation of Mr. Bright's left thumb. After returning to work, Mr. Bright's physician prescribed work restrictions for Mr. Bright,

including prohibitions on overtime, repetitive lifting with his left hand, and climbing ladders, along with weight-lifting restrictions.

In the ensuing months, Mr. Bright alleges, a series of incidents led him to believe that his supervisors were discriminating against him because of his disability. Mr. Bright further alleges that this discrimination culminated in his termination on February 12, 1996. Consequently, Mr. Bright asserts that the defendants' actions amount to a violation of the ADA, wrongful termination under Virginia law, and the intentional infliction of emotional distress. Mr. Bright decided to pursue remedies for these alleged wrongs in this Court.

Mr. Bright, however, is bound by a collective bargaining agreement between Norshipco and Mr. Bright's bargaining representative, Local No. 684 of the International Brotherhood of Boilermakers, Iron Ship Builders, Blacksmiths, Forgers and Helpers, AFL–CIO (collective bargaining agreement hereinafter referred to as "Agreement").

Article I, Section 7 of the Agreement provides:

(a) The Company and the Union agree that, as required by applicable laws, they will not discriminate against any employee because of race, color, sex, religion, national origin, age, disability, veteran status, marital status . . . .

. . . .

(c) This Agreement shall be administered in accordance with the applicable provisions of Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act, the Age Discrimination in Employment Act, and other state and federal non-discrimination statutes and regulations.

(d) Any and all disputes arising under this Article, as with all other articles of this contract, shall be subject to the jurisdiction of the Grievance and Arbitration provisions of this contract. Decisions rendered in arbitration with respect to such disputes shall be final and binding upon the parties and the affected employees. Nothing contained in this Article shall preclude any

employee from exercising his/her rights under federal and state law.

Article XI of the Agreement sets forth the grievance and arbitration procedures:

Section 1. The term "Grievance" as used in this Agreement shall mean any complaint, disagreement, or difference in opinion between any Employee or the Union and the Company which concerns the interpretation of application of an article or provision of this Agreement.

. . . .

[Article XI goes on to provide a detailed, four-step grievance process. At the conclusion of this process, Article XI provides:] If the grievance is not satisfactorily adjusted . . . the Union may submit the case to arbitration. . . . The decision of such arbitrator on any grievance which shall have been submitted to the arbitrator . . . shall be final and binding upon the Company and the Union and the Employees concerned therein. . . .

Mr. Bright, however, has neither grieved nor attempted to arbitrate his claim. Instead, he argues that use of the grievance/arbitration procedure is permissive, not mandatory, and thus "relates only to cases, unlike this one, where the aggrieved employee has elected the CBA's grievance and arbitration procedure rather than litigation." Pl.Mem. at 2. He points to two phrases in the agreement: (1) the final sentence of Article I, Section 7, which says, "Nothing contained in this Article shall preclude any employee from exercising his/her rights under federal and state law," and (2) the arbitration clause itself, which states, "the Union may submit the case to arbitration." (emphasis added).

## II. Analysis

The recent landmark case, *Austin v. Owens–Brockway Glass Container, Inc.,* 78 F.3d 875 (4th Cir.1996), so nearly mirrors the instant case that an extended discussion of *Austin* appropriately follows.

In *Austin,* a unionized employee sued her employer for violating Title VII and the ADA. The collective bargaining agreement, by which the plaintiff in *Austin* was bound, provided:

## ARTICLE 38

### Fair Employment Practice and Equal Opportunities

1. The Company and the Union will comply with all laws preventing discrimination against any employee because of race, color, religion, sex, national origin, age, handicap, or veteran status.

2. This Contract shall be administered in accordance with the applicable provisions of the Americans with Disabilities Act.

. . . .

3. Any disputes under this Article as with all other Articles of this Contract shall be subject to the grievance procedure.

*Id.* at 879–80. The panel in *Austin* noted that the grievance procedure specifically provided for binding arbitration, and further quoted the collective bargaining agreement:

### ARTICLE 32

### Arbitration

1. All disputes not settled pursuant to the procedure set forth in Article 31, Grievance Procedure, may be referred to arbitration. . . .

. . . .

5. . . . . The arbitrator's decision shall be final and binding upon both parties.

*Id.* at 880.

Pursuant to this agreement, the employer in *Austin* had filed a motion to dismiss for lack of subject matter jurisdiction. In rejecting both Ms. Austin's contractual interpretation that arbitration was permissive and her policy arguments against the arbitration of Title VII and ADA claims, the Fourth Circuit held,

> Miss Austin is a party to a voluntary agreement to submit statutory claims to arbitration. . . . . This voluntary agreement is consistent with the text of Title VII and the Disabilities Act, the legislative intent behind those statutes, and the purposes of those statutes. Finding that Congress did not intend to preclude arbitration of claims under Title VII and the Disabilities Act, we hold that the arbitration provision in this collective bargaining agreement is enforceable.

. . . .

> Since we have affirmed an adjudication that the court could not hear [Ms. Austin's claim] because of agreed-upon arbitration, the dismissal of the case should be without prejudice to the merits of the claim asserted. Whether or not Miss Austin has abandoned her claim or otherwise rendered it unenforceable by choosing to attempt to litigate the same rather than arbitrate it is also a question upon which we express no opinion.
>
> On remand, the district court will amend its order dismissing the case to insure it expresses no opinion on the merits of the claim, or whether or not the same is subject to arbitration, or whether or not it may now be so asserted.

*Id.* at 885–86.

■ In the instant case, Mr. Bright understandably but vainly struggles to distinguish *Austin.* He first argues that the grievance/arbitration procedure in the Agreement is permissive, not mandatory, because the Union "may" submit the case to arbitration. Unfortunately for Mr. Bright, *Austin* dealt with an identical objection, and held that "the purpose of the word 'may' in this section of the collective bargaining agreement is to give an aggrieved party the choice between arbitration and abandonment of his claim, he 'may' either arbitrate or abandon the claim." *Id.* at 879.

■ Mr. Bright alternatively bases the supposed permissiveness of arbitration on the final sentence of Article I, Section 7, which says, "[n]othing contained in this Article shall preclude any employee from exercising his/her rights under federal and state law." This alternative argument is refuted nearly as easily as the first argument. The immediately preceding sentences in Article I, Section 7 says these disputes SHALL be subject to the grievance procedure, and the result of that procedure SHALL be final and binding. The parties surely did not intend to undo the first two sentences by saying in the third sentence that nothing precludes the exercise of the employee's "rights under federal and state law." Instead, the third sentence likely is an informative sentence, meant

to explain to employees that they are not losing rights; instead, disputes involving those rights simply will be adjudicated in arbitration rather than litigation. Further, the Court must resolve any doubt in favor of arbitration. *See Dean Witter Reynolds v. Byrd,* 470 U.S. 213, 218, 105 S.Ct. 1238, 1241, 84 L.Ed.2d 158 (1985); *United Steelworkers v. Warrior & Gulf Navigation Co.,* 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960); *McCrea v. Copeland,* 945 F.Supp. 879 (D.Md. 1996).[1]

Mr. Bright's remaining contentions essentially present the same policy arguments against arbitration that *Austin* rejected. Ordinarily, this Court would simply cite *Austin* as dispositively refuting those arguments and comment no further. Because this Court so emphatically agrees with the reasoning underlying *Austin* and other recent cases favoring the arbitration of disputes, however, additional remarks seem appropriate.

A free country, such as the United States, typically provides a court system for parties to resolve disputes peacefully and effectively. Statutes and the common law developed to help courts resolve the complex conflicts that arise in a free society. The *raison d'etre* for lawyers and the adversarial process traditionally was to provide laypersons with affordable, expeditious resolutions of disputes. Yet, somehow in the development of the law through the last half of this century, the process became an end in itself rather than simply the means by which parties resolve disputes. The unintended consequences of well-meant but ill-advised changes in some of the most important facets of litigation, such as the acceptance of "notice pleading" (some say "no pleading"), expansive discovery, and liberal motions practice, helped cause this unfortunate evolution.

As a result, access to the courts now is neither affordable nor expeditious. In many federal district courts and state courts, years pass before an aggrieved party can even have the proverbial day in court. In the meantime, the process grinds along, inflicting staggering legal expenses on the parties. Except for the very rich (and very poor, in some circumstances), we have simply priced the court system beyond the reach of most citizens, because the cost of litigation far exceeds the value of the decision itself. Indeed, even the most resourceful parties often decline to pursue legal rights, simply because quickly accepting or paying a sum of money in settlement of any claim often costs far less than determining in court the merit of that claim. In short, our current legal system for resolving disputes is losing the respect of the public and is rapidly approaching failure.

The consequent embracing of alternative methods of dispute resolution should surprise no one. The arbitral process, for instance, nearly always exceeds the judicial process in speed, efficiency, and inexpense. We should view arbitration not with suspicion but with relief. Arbitration and other alternative methods of dispute resolution provide for ordinary citizens and businesses what our court system no longer produces with any regularity: Affordable, speedy justice. Until we solve the ills besieging our courts, I urge the United States Supreme Court, the Fourth Circuit, and all other federal courts to favor the arbitration of disputes. For the record, this Court surely does.

### III. Conclusion

Pursuant to *Austin* and this Court's interpretation of the Agreement, the Court **FINDS** that the Court has no jurisdiction over plaintiff's ADA claim, because the Agreement mandates the use of the grievance/arbitration process to resolve this claim.

---

**1.** Nevertheless, arbitration "is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *AT & T Technologies, Inc. v. Communications Workers of America,* 475 U.S. 643, 648, 106 S.Ct. 1415, 1418, 89 L.Ed.2d 648 (1986); *PaineWebber, Inc. v. Bybyk,* 81 F.3d 1193, 1198 (2d Cir.1996). For instance, in a case decided by this Court today, *Rudolph v. Alamo Rent–A–Car,* Civil Action No. 2:96cv732, —— F.Supp. —— (E.D.Va.1997), this Court declined to compel arbitration of the plaintiff's claims of sexual harassment under Title VII, because the plaintiff's employment contract simply failed to require the arbitration of her statutory claims. As the opinion in *Rudolph* explains at length, if an employment contract provides arbitration only of contractual disputes and no where specifically provides for the arbitration of statutory disputes, this Court will not grant a motion to compel arbitration of statutory claims.

As *Austin* directed, this Court expresses no opinion on either the underlying merits of plaintiff's claims or whether his claim has been rendered unenforceable by his choosing to attempt litigation rather than prompt grievance and arbitration. Pursuant to the rule of law in *Austin*, Count One of plaintiff's complaint, which contains his ADA claim, is hereby **DISMISSED WITHOUT PREJUDICE.**

Because the Court must dismiss plaintiff's federal claim, the Court is without jurisdiction to hear plaintiff's remaining state-law claims, set forth in Counts Two and Three of his complaint. Accordingly, all remaining claims and counts in plaintiff's complaint also are hereby **DISMISSED WITHOUT PREJUDICE.**

The Clerk is **DIRECTED** to forward a copy of this order to counsel for all parties.

**IT IS SO ORDERED.**