[No. H015966. Sixth Dist. Oct. 31, 1997.]

LAWRENCE TORREZ, Plaintiff and Respondent, v.
CONSOLIDATED FREIGHTWAYS CORPORATION OF DELAWARE,
Defendant and Appellant.

**[Opinion certified for partial publication.\*]**

*Pursuant to California Rules of Court, rule 976.1, this opinion is certified for publication with the exception of part IIIB.

COUNSEL

Fisher & Phillips, Ned A. Fine and John P. Boggs for Defendant and Appellant.

Peter MacClaren for Plaintiff and Respondent.

OPINION

COTTLE, P. J.—

I

In the published portion of this opinion, we are asked to determine whether an employee may be compelled to arbitrate a statutory discrimination claim under the California Fair Employment and Housing Act (Gov. Code, § 12900 et seq.) where the employee's union has entered into a collective bargaining agreement with the employer to arbitrate all employment-related claims. In *Austin v. Owens-Brockway Glass Container, Inc.* (4th Cir. 1996) 78 F.3d 875 (*Austin*), a divided court held that an arbitration provision in a collective bargaining agreement was enforceable with respect to an employee's statutory discrimination claims. Since *Austin*, virtually every court[1] that has considered the issue has disagreed. In lengthy analyses, these courts have explained that the *Austin* majority misinterpreted the United States Supreme Court precedents, *Gilmer v. Interstate/Johnson Lane*

---

[1]Two cases, which came out immediately following *Austin*'s publication, followed it, with almost no discussion: *Henry v. Colonial Baking Co. of Dothan* (M.D.Ala. 1996) 952 F.Supp. 744 and *Jessie v. Carter Health Care Center, Inc.* (E.D.Ky. 1996) 930 F.Supp. 1174. Thereafter followed an essentially unanimous string of cases rejecting *Austin*, including *Bush v. Carrier Air Conditioning* (E.D.Tex. 1996) 940 F.Supp. 1040; *Hill v. American Nat. Company/Foster Forbes Glass* (N.D.Texas 1996) 952 F.Supp. 398; *Buckley v. Gallo Sales Co.* (N.D.Cal. 1996) 949 F.Supp. 737; *Brisentine v. Stone & Webster Engineering Corp.* (11th Cir. 1997) 117 F.3d 519; *Pryner v. Tractor Supply Co., Inc.* (S.D.Ind. 1996) 927 F.Supp. 1140, affd. *Pryner v. Tractor Supply Co.* (7th Cir. 1997) 109 F.3d 354; *Gray v. Toshiba America Consumer Products, Inc.* (M.D.Tenn. 1997) 959 F.Supp. 805; *Krahel v. Owens-Brockway Glass Container, Inc.* (D.Ore. 1997) 971 F.Supp. 440; *Kirkendall v. United Parcel Service, Inc.* (W.D.N.Y. 1997) 964 F.Supp. 106; *Breech v. Alabama Power Co.* (S.D.Ala. 1997) 962 F.Supp. 1447; *LaChance v. Northeast Publishing, Inc.* (D.Mass. 1997) 965 F.Supp. 177; *Nieves v. Individualized Shirts* (D.N.J. 1997) 961 F.Supp. 782; *Harrison v. Eddy Potash, Inc.* (10th Cir. 1997) 112 F.3d 1437; *Araiza v. National Steel and Shipbuilding Co.* (S.D.Cal. 1997) 973 F.Supp. 963; *Vargas v. Gromko* (N.D.Cal. 1997) 977 F.Supp. 996. In the midst of this widespread rejection of *Austin*, a third case, from a lower court within the Fourth Circuit, came out following *Austin*. (See *Bright v. Norshipco & Norfolk Shipbuilding* (E.D.Va. 1997) 951 F.Supp. 95.) Even within the Fourth Circuit, however, lower courts have distinguished their facts from *Austin*, thus avoiding its holding. (See *Rudolph v. Alamo Rent A Car, Inc.* (E.D.Va. 1997) 952 F.Supp 311.)

*Corp.* (1991) 500 U.S. 20 [111 S.Ct. 1647, 114 L.Ed.2d 26] (*Gilmer*) and *Alexander* v. *Gardner-Denver Co.* (1974) 415 U.S. 36 [94 S.Ct. 1011, 39 L.Ed.2d 147] (*Gardner-Denver*), upon which it based its holding. As we shall explain, we join the growing chorus of cases rejecting *Austin's* reasoning.[2] Accordingly, we affirm the trial court's order denying the employer's petition to compel arbitration of the employee's statutory discrimination claims. In the unpublished portion of this opinion, we reverse the trial court's order to the extent it denied arbitration of the employee's nonstatutory claims, and we remand to the trial court to determine whether arbitration of the nonstatutory claims should be stayed pending litigation.

## II

### FACTUAL AND PROCEDURAL BACKGROUND

In his complaint, Lawrence Torrez alleged he was suspended on October 21, 1992, for working more than 70 hours in an 8-day period. Non-Hispanic workers who violated this rule were allegedly given only warnings. He was then terminated on June 2, 1993, for falsifying his driving log. Non-Hispanic drivers were never terminated for falsifying driving logs, which was a common practice. He grieved his termination and was reinstated based on a "determin[ation] that Plaintiff had been disciplined much more severely than non-Hispanic and non-Mexican transport operators . . . ." Following his reinstatement, he was terminated again on September 16, 1993, "for not accurately reflecting the time he actually worked on his log." He grieved this second termination on the grounds of discrimination, and was reinstated once again. Subsequently he "was forced to take a medical leave of absence from work due to the emotional distress he experienced from the discrimination he received . . . ."

Torrez's employment was governed by the terms of a collective bargaining agreement between his employer, Consolidated Freightways Corporation of Delaware (CF), and the International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America (Teamsters). The collective bargaining agreement included provisions governing the discharge of employees, prohibiting discrimination on the basis of sex, age, race, creed, color or national origin, and establishing a mandatory grievance and binding arbitration procedure.

On November 13, 1995, Torrez filed suit against CF, alleging violations of the FEHA and California Constitution, intentional infliction of emotional

---

[2]Although this is an issue of first impression in the California courts, we note that three of the federal cases rejecting *Austin* dealt with and considered the California Fair Employment and Housing Act (FEHA). (See *Buckley* v. *Gallo Sales Co., supra,* 949 F.Supp. 737; *Araiza* v. *National Steel and Shipbuilding Co, supra,* 973 F.Supp. 963 and *Vargas* v. *Gromko, supra,* 977 F.Supp. 996.)

distress, and tortious wrongful termination. In lieu of an answer, CF filed a petition to compel arbitration and stay the proceedings. The court denied CF's petition, and CF appeals from that denial.

III

DISCUSSION

A. *Torrez's Statutory Discrimination Claim*

In *Austin*, in this case, and in the numerous cases cited in footnote 1, *ante*, of this opinion, the issue presented was the same: Can an employee be compelled to arbitrate statutory discrimination claims where an agreement to arbitrate all employment-related claims[3] is contained in a collective bargaining agreement?

Because the United States Supreme Court has never dealt with precisely this issue, lower courts have had to extrapolate from Supreme Court precedents that are distinguishable on their facts. The court in *Austin* concluded from these precedents that an arbitration agreement specifically listing statutory discrimination as a claim subject to arbitration was enforceable and precluded the employee from suing her employer. Other courts, analyzing the same precedents, have concluded otherwise. We begin our discussion with a review of these Supreme Court precedents.

1. *Gardner-Denver and Its Progeny*

In *Gardner-Denver, supra,* 415 U.S. 36, the court held that a plaintiff was not precluded from filing a title VII lawsuit against his employer by having earlier submitted his claim to final arbitration under a collective bargaining agreement. In so holding, the court noted the "distinctly separate nature" of "contractual and statutory rights." (*Id.* at p. 50 [94 S.Ct. at p. 1020].) The grievance/arbitration procedures in the collective bargaining agreement were

---

[3]We agree with CF that the agreement to arbitrate in the instant case encompasses statutory discrimination claims. The collective bargaining agreement between the Teamsters and CF required arbitration of all disputes and specifically provided: "The Employer and the Union agree not to discriminate against any individual with respect to hiring, compensation, terms or conditions of employment because of such individual's race, color, religion, sex, age, or national origin nor will they limit, segregate or classify employees in any way to deprive any individual employee of employment opportunities because of race, color, religion, sex, age, or national origin or engage in any other discriminatory acts prohibited by law. This Article also covers employees with a qualified disability under the Americans with Disabilities Act." The issue, however, is whether the union's agreement to arbitrate statutory discrimination claims should be binding on individual employees. As we shall explain, *Gardner-Denver* holds that the union's agreement is insufficient, and *Gardner-Denver* is still good law.

intended to address the employee's contractual rights, while title VII created an independent right to be free from racial discrimination. (*Id.* at pp. 49-50 [94 S.Ct. at pp. 1020-1021].) Therefore, an agreement limiting contractual remedies to a particular forum (such as the arbitral forum) would not affect the employee's statutory rights. (*Id.* at p. 50 [94 S.Ct. at pp. 1020-1021].)

The court noted that a union may waive certain types of statutory rights that are related to "collective activity," such as the right to strike. (*Gardner-Denver, supra*, 415 U.S. at p. 51 [94 S.Ct. at p. 1021].) This is because these rights "are conferred on employees collectively to foster the processes of bargaining and properly may be exercised or relinquished by the union as collective-bargaining agent to obtain economic benefits for union members." (*Ibid.*)

On the other hand, the court observed, title VII "stands on plainly different ground; it concerns not majoritarian processes, but an individual's right to equal employment opportunities. Title VII's strictures are absolute and represent a congressional command that each employee be free from discriminatory practices. Of necessity, the rights conferred can form no part of the collective-bargaining process since waiver of these rights would defeat the paramount congressional purpose behind Title VII. In these circumstances, an employee's rights under Title VII are not susceptible of prospective waiver." (*Gardner-Denver, supra*, 415 U.S. at p. 51 [94 S.Ct. at p. 1921].)

The *Gardner-Denver* court also expressed concern about the different procedures followed in labor arbitration as compared with a judicial forum, the relative inexperience of labor arbitrators in civil rights litigation, and the limited remedies that an arbitrator might be permitted to award pursuant to a collective bargaining agreement. (415 U.S. at pp. 55-58 [94 S.Ct. at pp. 1023-1025].)

"A further concern," the court explained, "is the union's exclusive control over the manner and extent to which an individual grievance is presented. [Citations.] In arbitration, as in the collective-bargaining process, the interests of the individual employee may be subordinated to the collective interests of all employees in the bargaining unit. [Citations.] Moreover, harmony of interest between the union and the individual employee cannot always be presumed, especially where a claim of racial discrimination is made." (*Gardner-Denver, supra*, 415 U.S. at p. 58, fn. 19 [94 S.Ct. at p. 1024].)

The Supreme Court reaffirmed and extended the themes set forth in *Gardner-Denver* in two later opinions. In *Barrentine* v. *Arkansas-Best*

*Freight System* (1981) 450 U.S. 728 [101 S.Ct. 1437, 67 L.Ed.2d 641] (*Barrentine*), the court held that a truck driver could pursue his claims under the Fair Labor Standards Act, notwithstanding his unsuccessful participation in grievance procedures mandated by a collective bargaining agreement. And in *McDonald* v. *West Branch* (1984) 466 U.S. 284 [104 S.Ct. 1799, 80 L.Ed.2d 302] (*McDonald*), the court applied the same rule with respect to a plaintiff bringing a civil rights action under 42 United States Code section 1983 following an adverse arbitration decision.

### 2. *Gilmer and Its Progeny*

Seventeen years later, the Supreme Court decided *Gilmer, supra,* 500 U.S. 20. In what appeared initially to be a departure from *Gardner-Denver,* the court held that an agreement to arbitrate a statutory claim is generally enforceable. In *Gilmer,* the plaintiff had been required by his employer to register as a securities representative with the New York Stock Exchange (NYSE). The registration application contained an agreement to arbitrate " 'any dispute, claim or controversy' " arising between him and his employer " 'that is required to be arbitrated under the rules' " of the NYSE. The NYSE rules required arbitration of " '[a]ny controversy between a registered representative and any member or member organization arising out of the employment or termination of employment of such registered representative.' " (*Id.* at p. 23 [11 S.Ct. at pp. 1650-1651].)

The employer terminated Gilmer's employment when Gilmer was 62 years old. In response, Gilmer filed a charge with the Equal Employment Opportunity Commission (EEOC) and brought an action in the federal district court, alleging he had been discharged in violation of the Age Discrimination in Employment Act of 1967 (ADEA). The employer moved to compel arbitration pursuant to the NYSE registration application. Relying upon *Gardner-Denver,* the district court denied the motion. The Court of Appeals for the Fourth Circuit, however, reversed.

The Supreme Court affirmed the Fourth Circuit. The court first noted that it was deciding the case under the Federal Arbitration Act (FAA), 9 United States Code section 1 et seq., which expresses the " 'liberal federal policy favoring arbitration . . . .' " (*Gilmer, supra,* 500 U.S. at p. 25 [111 S.Ct. at p. 1651].) It then cited section 2 of the act: " '[a] written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.' " (*Id.* at pp. 24-25 [111 S.Ct. at p. 1651].)

The court next observed that statutory claims may be the subject of an arbitration agreement. (*Gilmer, supra,* 500 U.S. at p. 26 [111 S.Ct. at p. 1652].) " '[H]aving made the bargain to arbitrate, the party should be held to it unless Congress itself has evinced an intention to preclude a waiver of judicial remedies for the statutory rights at issue.' " (*Ibid.*) The court then held that because the clause in Gilmer's registration application was broad enough to encompass statutory claims and because Gilmer had not demonstrated that Congress intended to preclude the waiver of a judicial forum for the statutory ADEA claim, the arbitration clause should be enforced.

" '[B]y agreeing to arbitrate a statutory claim,' " the court explained, " 'a party does not forgo the substantive rights afforded by the statute; it only submits to their resolution in an arbitral, rather than a judicial, forum.' " (*Gilmer, supra,* 500 U.S. at p. 26 [111 S.Ct. at p. 1652], quoting *Mitsubishi Motors* v. *Soler Chrysler-Plymouth* (1985) 473 U.S. 614, 628 [105 S.Ct. 3346, 3354-3355, 87 L.Ed.2d 444].)

The court rejected the plaintiff's contention that *Gardner-Denver, Barrentine* and *McDonald* precluded arbitration of statutory employment discrimination claims. There were "several important distinctions between the *Gardner-Denver* line of cases and the case before us," the court explained. First, *Gardner-Denver* and its progeny did not involve the issue of the enforceability of an agreement to arbitrate statutory claims but instead raised the "quite different issue whether arbitration of contract-based claims precluded subsequent judicial resolution of statutory claims." (*Gilmer, supra,* 500 U.S. at p. 35 [111 S.Ct. at p. 1657].) The court noted that because the plaintiff in *Gardner-Denver* had not agreed to arbitrate his statutory claims, the labor arbitrators were not authorized to resolve those claims, and thus the arbitration in those cases "understandably was held not to preclude subsequent statutory actions." (*Ibid.*)

Second, *Gardner-Denver* occurred in the context of a collective bargaining agreement and the claimants were represented by their unions in the arbitration proceedings. Therefore, the *Gardner-Denver* court was concerned about the "tension between collective representation and individual statutory rights, a concern not applicable to the present case." (*Gilmer, supra,* 500 U.S. at p. 35 [111 S.Ct. at p. 1657].)

Lastly, those cases were not decided under the FAA, "which . . . reflects a 'liberal federal policy favoring arbitration agreements.' [Citation.]" (*Gilmer, supra,* 500 U.S. at p. 35 [111 S.Ct. at p. 1657].)

On only one point did the *Gilmer* court reject views it had expressed in *Gardner-Denver, Barrentine* and *McDonald,* i.e., that arbitration was inferior

to the judicial process for resolving disputes. " '[W]e are well past the time,' " the court explained, " 'when judicial suspicion of the desirability of arbitration and of the competence of arbitral tribunals inhibited the development of arbitration as an alternative means of dispute resolution.' " (*Gilmer, supra,* 500 U.S. at p. 34, fn. 5 [111 S.Ct. at p. 1656], quoting *Mitsubishi Motors* v. *Soler Chrysler-Plymouth, supra,* 473 U.S. at pp. 626-627 [105 S.Ct. at pp. 3353-3354].)

In all other respects, the court left *Gardner-Denver* intact, a point the Supreme Court made clear in a later case, *Livadas* v. *Bradshaw* (1994) 512 U.S. 107 [114 S.Ct. 2068, 129 L.Ed.2d 93]. "In holding that an agreement to arbitrate an Age Discrimination in Employment Act claim is enforceable under the Federal Arbitration Act, *Gilmer* emphasized its basic consistency with our unanimous decision in [*Gardner-Denver*] . . . ." (*Id.* at p. 127, fn. 21 [114 S.Ct. at p. 2080].)[4]

Following *Gilmer*, a number of lower federal courts and some state courts have applied the *Gilmer* rule that statutory claims are arbitrable " '. . . unless Congress [or the Legislature] has evinced an intention to preclude a waiver of judicial remedies for the statutory rights at issue' " (500 U.S. at p. 26 [111 S.Ct. at p. 1652]) to statutory schemes other than the ADEA. In each of these cases, the arbitration agreement was entered into by the employee individually with his or her employer. Indeed, most of the cases involved the same NYSE securities registration application that the *Gilmer* plaintiff signed. (See *Bender* v. *A.G. Edwards & Sons, Inc.* (11th Cir. 1992) 971 F.2d 698 [title VII sexual harassment suits could be subject to compulsory arbitration]; *Willis* v. *Dean Witter Reynolds, Inc.* (6th Cir. 1991) 948 F.2d 305, [*Gilmer* rule applies to title VII as well as Kentucky state claims of sexual harassment and gender discrimination]; *Alford* v. *Dean Witter Reynolds, Inc.* (5th Cir. 1991) 939 F.2d 229 [*Gilmer* applies to title VII]; *Mago* v. *Shearson Lehman Hutton, Inc.* (9th Cir. 1992) 956 F.2d 932 [*Gilmer* applies to title VII sexual harassment and gender discrimination suit]; *Benefits Communication Corp.* v. *Klieforth* (D.C. 1994) 642 A.2d 1299 [*Gilmer* applies to District of Columbia's Human Rights Act, which is based on federal civil rights statutes]; *Fletcher* v. *Kidder, Peabody & Co., Inc.* (1993) 81 N.Y.2d 623 [601 N.Y.S.2d 686, 619 N.E.2d 998] [*Gilmer* applies to New York state statutory discrimination claim].)

---

[4]The California Supreme Court appears to be of the same opinion. In *Brosterhous* v. *State Bar* (1995) 12 Cal.4th 315, 332 [48 Cal.Rptr.2d 87, 906 P.2d 1242], the court observed that *Gilmer* "does not appear to be a controlling departure from the earlier arbitration cases [i.e., *Gardner-Denver, Barrentine,* and *McDonald*]."

### 3. *Austin*

In *Austin, supra,* 78 F.3d 875, a divided Fourth Circuit court extended the *Gilmer* rule that statutory claims are generally arbitrable to collective bargaining agreements containing arbitration clauses. The plaintiff in *Austin,* a union employee, was injured on the job and requested light-duty work. Told that none was available, she was placed on leave and provided with workers' compensation benefits. While she was on leave, the employer eliminated her position and then terminated her employment.

The employee brought an action in the district court, alleging that the employer's refusal to offer her light-duty work and its decision to terminate her employment violated title VII and the Americans with Disabilities Act (ADA), 42 United States Code section 12101 et seq. The court granted the employer's motion for summary judgment based on the employee's failure to process her claims under the arbitration procedure in the collective bargaining agreement.

A divided Fourth Circuit affirmed. Relying on *Gilmer,* the *Austin* majority held that the employee was precluded from bringing suit because she had agreed in her collective bargaining agreement to resolve the dispute by way of binding arbitration. (78 F.3d at p. 886.)

The court discussed the *Bender* v. *A.G. Edwards & Sons, Inc., supra,* 971 F.2d 698; *Willis* v. *Dean Witter Reynolds, Inc., supra,* 948 F.2d 305; *Alford* v. *Dean Witter Reynolds, Inc., supra,* 934 F.2d 229; *Mago* v. *Shearson Lehman Hutton, Inc., supra,* 956 F.2d 932; *Benefits Communication Corp.* v. *Klieforth, supra,* 642 A.2d 1299; and *Fletcher* v. *Kidder, Peabody & Co., Inc., supra,* 619 N.E.2d 998, cases that are cited in section 2 of this opinion and concluded, "The only difference between these six cases and this case is that this case arises in the context of a collective bargaining agreement. *Bender, Willis, Alford, Klieforth,* and *Fletcher* arose in the context of employment contracts growing out of securities registration applications, and *Mago* also arose in the context of an employment contract. In all of the cases, however, including the case at hand, the employee attempting to sue had made an agreement to arbitrate employment disputes. Whether the dispute arises under a contract of employment growing out of securities registration application, a simple employment contract, or a collective bargaining agreement, an agreement has yet been made to arbitrate the dispute. So long as the agreement is voluntary, it is valid, and we are of opinion it should be enforced." (*Austin, supra,* 78 F.3d at p. 885.)

In a forceful dissent, Judge Hall observes, "After its inventory of cases that follow the holding of *Gilmer* . . . , the majority concludes, '[t]he only

difference between these . . . cases and this case is that this case arises in the context of a collective bargaining agreement.' *Supra* at 885. I agree. The majority fails to recognize, however, that the only difference makes all the difference. A labor union may not prospectively waive a member's individual right to choose a judicial forum for a statutory claim." (*Austin, supra*, 78 F.3d at p. 886 (dis. opn. of Hall, J.).)

### 4.  *A Sampling of Reactions to Austin*

As one court put it, "*Austin* has not been universally accepted, and for good reason. [We] agree[] with the assessment of the dissent and most other courts which have considered the issue that *Austin* fails to come to grips with the fundamental fact that *Gardner-Denver* is still the law. The *Gilmer* court went out of its way to distinguish its holding from that of *Gardner-Denver*. It recognized the established difference between an individual employment contract and a collective bargaining agreement and the policies which permit the waiver of statutory rights in the former but not in the latter." (*Nieves* v. *Individualized Shirts, supra*, 961 F.Supp. at p. 790.)

"[N]othing in *Gilmer*," another court pointed out, "suggests that the Court abandoned its concern with the inequities involved in forcing an employee to depend on a CBA for protection of his civil rights." (*Bush* v. *Carrier Air Conditioning, supra*, 940 F.Supp. at 1045.) *Gilmer*, it must be remembered involved an individual employment contract between a stockbroker and his employer. *Gardner-Denver*, on the other hand, involved an arbitration clause contained in a collective bargaining agreement between the worker's union and his employer.

The 11th Circuit has also rejected *Austin*. In *Brisentine* v. *Stone & Webster Engineering Corp., supra*, 117 F.3d 519, the court pointed out *Gilmer*'s emphasis on the " 'potential disparity in interests between a union and an employee' regarding the prosecution of the employee's individual statutory rights. . . . The *Gilmer* Court explained that the concern about the conflict between collective representation and individual statutory rights that was present in [*Gardner-Denver*] is not present in the context of individual employment contracts. [Citation.] Consequently, the Court was unconstrained by that concern when it determined in *Gilmer* that arbitration clauses in individual employment contracts are enforceable." (117 F.3d at p. 525.)

Similarly, in *Gray* v. *Toshiba America Consumer Products, Inc., supra*, 959 F.Supp at pages 812-813, the court refused to follow *Austin*, finding "that *Austin*'s reasoning is misguided, and misinterprets *Gilmer*. The [*Austin*]

court focused primarily on the *voluntariness* of the agreement to arbitrate to determine enforceability, and, finding that Austin was a party to a collective bargaining agreement, voluntarily executed by the union and the employer, ordered that she comply with the agreement's requirement that she arbitrate her complaint. [Citation.] The *Austin* court, however, failed to acknowledge the clear distinctions drawn by the *Gilmer* Court between compulsory arbitration under individual contracts and collective bargaining agreements, which distinctions preclude the application of identical legal standards to both types of contracts. . . . [¶] [A theme underlying *Gilmer* was] that an *individual employee* has not necessarily 'voluntarily' assented to the terms of a collective bargaining agreement's compulsory arbitration clause. Under the federal labor laws, a union may collectively bargain on behalf of its members with mere majority approval, not unanimous approval, of such members. [Citations.] Further, the same tension between collective and individual representation that is applicable where the union advocates an individual employee's discrimination claim also applies where the union collectively bargains away the individual's right to adjudicate such a claim in . . . court."

### 5. *Application of These Precedents to the Instant Case*

■ After *Gilmer*, it is now clear that an individual may surrender his or her *statutory rights* in an individual employment contract unless Congress has expressed the intent that a particular right cannot be surrendered. The same is not true, however, with respect to statutory rights unrelated to "collective activit[ies]" that a union purports to surrender on behalf of its members. (*Gardner-Denver, supra,* 415 U.S. at p. 51 [94 S.Ct. at p. 1021].) In a collective bargaining agreement, the rights at issue are those within the confines of the agreement itself, i.e., they are contractual. Although an individual employment contract can address both contractual and statutory rights, a collective bargaining agreement, by its very nature, may address only the common, contractual rights of the members of the bargaining unit. (*Austin, supra,* 78 F.3d at p. 886 (dis. opn. of Hall, J.).)

■ In *Araiza* v. *National Steel and Shipbuilding Co., supra,* 973 F.Supp. at pages 968 to 969, the court discusses the important distinctions between arbitration under individual employment agreements and arbitration under collective bargaining agreements: "An employee arbitrating under an individual agreement, like the plaintiff in *Gilmer* can control the claim and be represented by counsel. The employee has rights of discovery and peremptory challenges to the arbitration panel. *See* Malin, [*Arbitrating Statutory Employment Claims in the Aftermath of Gilmer* (1996) 40 St. Louis U. L.J. 77,] 86. In addition, the employee's counsel would be liable for malpractice if the claim was [*sic*] handled negligently. [¶] In contrast, under a

collective bargaining agreement, the union would maintain complete control over an employee's grievance. 'It could drop the grievance, compromise it, or take it all the way to arbitration . . . .' *Id.* at 86-87. Unions are held to a duty of 'fair representation' which requires only that union representatives not act arbitrarily, discriminatorily, or in bad faith. *Id.* at 87. The Supreme Court noted that 'even if the employee's claim were meritorious, his union might, without breaching its duty of fair representation, reasonably and in good faith decide not to support the claim vigorously in arbitration.' [Citation.] Moreover, the employee's individual rights may be compromised inasmuch as they conflict with the union's collective interests. In *Barrentine*, . . . [t]he Supreme Court expressed concern that if the plaintiff were forced to arbitrate, the union's duty to maximize the overall compensation of its members might . . . permit [the union] to 'sacrifice' the plaintiff's statutory rights."

These distinctions between arbitration of statutory claims under individual employment contracts and arbitration of statutory claims pursuant to collective bargaining agreements led the court in *Araiza* to disregard *Austin* and adopt the "majority view." (*Araiza* v. *National Steel and Shipbuilding Co.,* *supra,* 973 F.Supp. at pp. 968-969.)

■ We also adopt the majority view. Nothing in *Gilmer* suggests the court abandoned its intention to prevent, in the context of a collective bargaining agreement, the potential subjugation of individual rights to the rights and interests of the majority represented by the union. (*Bush* v. *Carrier Air Conditioning, supra,* 940 F.Supp. at p. 1045.)

*Gardner-Denver* is the law as explicated by the highest court of this land. It was not overruled by *Gilmer* and thus remains the law that this court is obliged to follow. Indeed, the Supreme Court recently reaffirmed *Gilmer's* "basic consistency with our unanimous decision in [*Gardner-Denver*] . . . ." (*Livadas* v. *Bradshaw, supra,* 512 U.S. 107, 127, fn. 21 [114 S.Ct. 2068, 2080].) Under these circumstances, we hold that a union may not prospectively waive an employee's right to a judicial forum to hear his or her statutory discrimination claims.

It should be noted that plaintiff Torrez's claim against his employer was not based on title VII but rather on the California FEHA, which was modeled after the federal statute. However this is a distinction without a difference. Numerous courts have applied the *Gilmer/Gardner-Denver* rule to state antidiscrimination statutes that are modeled after title VII. (See e.g., *Willis* v. *Dean Witter Reynolds, Inc., supra,* 948 F.2d 305 [Kentucky state claims]; *Benefits Communication Corp.* v. *Klieforth, supra,* 642 A.2d 1299

[District of Columbia's Human Rights Act]; *Fletcher* v. *Kidder, Peabody & Co., Inc., supra,* 619 N.E.2d 998 [New York State claims].) In a recent federal case discussing the FEHA, the court held "that Plaintiff's FEHA claim, like his federal statutory claims, is not barred by the mandatory arbitration provisions of his union's CBA. The rights protected by FEHA deserve the same protection that the Court has afforded the ADEA and the ADA, and the Court finds no reason to apply a different rule to state statutory claims than governs federal claims. Moreover, the commentary in *Spellman*[ v. *Securities, Annuities & Ins. Services, Inc.* (1992) 8 Cal.App.4th 452, 461 [10 Cal.Rptr.2d 427]] indicates that if directly confronted with the issue, the California [courts] would likely find that *Gardner-Denver* continues to govern in the context of collective bargaining agreements. Plaintiff is not required to arbitrate his FEHA claim. . . ." (*Araiza* v. *National Steel and Shipbuilding Co., supra,* 973 F.Supp. at p. 970; accord, *Vargas* v. *Gromko, supra,* 977 F.Supp. 996; *Buckley* v. *Gallo Sales Co., supra,* 949 F.Supp. 737.)

Under these circumstances, we conclude the trial court did not err when it denied the employer's petition to compel arbitration of Torrez's FEHA claim.

B.  *Torrez's Nonstatutory Claims*\*

.   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .

IV

DISPOSITION

The order of the court denying CF's petition to compel arbitration of Torrez's statutory claims is affirmed. The matter is remanded to the trial court to make an order consistent with this opinion on Torrez's nonstatutory claims. Each party to bear its own costs on appeal.

Premo, J., and Bamattre-Manoukian, J., concurred.

---

\*See footnote, *ante,* page 1247.