[No. C033137. Third Dist. Jan. 31, 2001.]

PAMELA T. CAMARGO, Plaintiff and Appellant, v.
CALIFORNIA PORTLAND CEMENT COMPANY et al., Defendants and
Respondents.

**[Opinion certified for partial publication.*]**

*Pursuant to California Rules of Court, rule 976.1, this opinion is certified for publication with the exception of parts III and IV of the Discussion.

996

998

**COUNSEL**

Curtis & Arata, Matthew R. Berrien and Sabrina M. Tourtlotte for Plaintiff and Appellant.

Musick, Peeler & Garrett, Elaine M. Smith, Gary F. Overstreet and Michael R. Goldstein for Defendants and Respondents.

**OPINION**

**SIMS, Acting P. J.**—Plaintiff Pamela T. Camargo was a member of a union and was employed by defendant California Portland Cement Company (CPCC or the company).

The union and CPCC entered into a collective bargaining agreement (CBA) that provided for the resolution of disputes or grievances by binding arbitration.

Pursuant to the CBA, Camargo submitted her grievances based on sex discrimination and sexual harassment to arbitration. The arbitrator ruled against her, and the arbitrator's "award" was confirmed by the United States District Court for the Eastern District of California, which opined that Camargo was still entitled to pursue her federal statutory claims in court.

Camargo did not file suit in federal court. Instead, she filed a complaint in San Joaquin County Superior Court. Her complaint sought damages from CPCC and from individual defendants Gary Beeson, Mike Dominisse, and Mike O'Dell for sex discrimination and sexual harassment under California's Fair Employment and Housing Act (Gov. Code, § 12900 et seq.) (FEHA) and for intentional infliction of emotional distress.

Defendants demurred to the complaint. They contended that Camargo's FEHA claims were collaterally estopped by the arbitration award and that her claim for intentional infliction of emotional distress was barred by the statute of limitations.

The trial court sustained the demurrer on all grounds raised by defendants and dismissed Camargo's complaint. Camargo appeals.

In the published portion of this opinion, we shall conclude the trial court erred in giving collateral estoppel effect to the arbitration award, because the record on appeal fails to show (1) that the CBA "clearly and unmistakably" provided for the binding arbitration of an employee's statutory FEHA claims; and (2) that the arbitration was conducted pursuant to procedures that allowed for the full litigation and fair adjudication of the FEHA claims.

However, in an unpublished portion of the opinion, we shall affirm the dismissal of Camargo's complaint against individual defendants Gary Beeson, Mike Dominisse, and Mike O'Dell because Camargo has stated no viable cause of action against them and has not shown how her complaint could be amended to do so. We shall also affirm the dismissal of the complaint as to all defendants on Camargo's cause of action for intentional infliction of emotional distress, which the trial court found was barred by the statute of limitations.

FACTUAL AND PROCEDURAL BACKGROUND

*The arbitration and the DFEH claim.*

Camargo, an employee of defendant CPCC since 1987, belonged to the Northern California District Council of Laborers Local Union No. 73 (the

union). The union's CBA with the company, in effect as of 1994, provided that "any dispute, difference or grievance" between the company and an employee would go to arbitration before "an impartial arbitrator" on reference by either the company or the union, that "the decision of the impartial arbitrator shall be final and binding on all parties," and that "the arbitrator shall not have the power to alter or amend the terms of this Agreement." (Art. XIII, §§ 3-4.)

The CBA also provided: "[T]he Employer will not, nor will the Union cause the Employer to fail or refuse to hire, nor will the Employer discharge, or [sic] will the Union cause the Employer to discharge or otherwise discriminate against any employees because of such employee's race, color, religion, age, sex or national origin. [¶] Promotion will be based on the individual's seniority, qualification, training, competency and potential and shall not be influenced by race, color, religion, age, sex, or national origin." (Art. III, §§ 1-2.) The CBA did not cite or refer to any federal or state antidiscrimination statute.

On September 25, 1996, Camargo filed a grievance with the union, apparently alleging sexual discrimination and harassment by the company and certain individual employees from approximately 1992 to the present. On or about February 25, 1997, the union presented the grievance to the company for arbitration under the CBA. (No written grievance by either Camargo or the union is in the record on appeal.) Franklin Silver was chosen as arbitrator.

On October 21, 1997, before the arbitration began, Camargo filed an administrative claim for sexual discrimination and harassment with the California Department of Fair Employment and Housing (DFEH), naming as defendants the company and three employees: terminal operator Richard Ferrero (sic: Firneno), manager Gary Beeson, and plant manager Mike Dominisse. The DFEH complaint alleged as follows:

"I. During the course of my employment as a Terminal Operator, I was sexually harassed by Terminal Operator Richard Ferneno [sic]. The last incident occurred on September 3, 1997. In December 1996, I was denied a promotion to Lead Terminal Operator.

"II. I was not given a reason for the denial of promotion.

"III. I believe I was sexually harassed, which is discrimination on the basis of sex, female[,] and that I was denied promotion in retaliation for my protesting the sexual harassment. My beliefs are based on the following:

"A. From approximately 1992 to September 1997, I have been sexually harassed by Terminal Operator Richard Ferneno [*sic*]. The harassment was of a physical, visual and verbal nature and occurs two to three times a week (specifics on file with the Department of Fair Employment and Housing). The harassment creates a hostile work environment.

"B. The sexual harassment has been reported to Manager Gary Beeson, his byline is 'its [*sic*] your word against mine.' The sexual harassment has also been reported to Plant Manager Mike Domonisse [*sic*] but nothing has been done and the sexual harassment continues.

"C. I am the most senior Terminal Operator. Promotions in the past were given by seniority. The plant instituted a new policy for promotions and in December of 1996 gave a lead position to a male employee with less seniority.

"D. On September 25, 1996 I filed a grievance with my union, Laborers Local 73. The company has continuously put off responding to the grievance. The last reason given was contract negotiations. Contract negotiations concluded in July of 1997. I nor my union counsel [*sic*] have received a response to my complaints.

"E. After I complained to my union there were sexual pictures drawn with my name and expletives (descriptions on file with DFEH) on my locker and notes left at places in the plant were [*sic*] I work (comments on file with DFEH). I have found the lock on my locker covered with grease which a co-worker helped me clean (name on file with DFEH)."

Arbitrator Silver conducted a hearing on Camargo's grievance on February 5 and March 5, 1998. Both parties were represented by counsel, who submitted exhibits and written closing briefs. (These exhibits and briefs are not in the record, and the hearing apparently was not transcribed.)

On May 29, 1998, arbitrator Silver filed a written "opinion and award" rejecting Camargo's grievance.

The arbitrator's opinion states that the parties "had the opportunity to examine and cross-examine witnesses and to present relevant evidence." It does not state whether the parties had discovery and compulsory process, or what rules of evidence (if any) were followed.

The opinion frames the issue: "Did the Employer violate the Agreement [the CBA] by sexually harassing and/or sexually discriminating against

Pamela Camargo? If so, what is the appropriate remedy?" The opinion then describes 13 incidents of alleged harassment or discrimination covering the period 1991-1997, setting out the testimony on both sides as to each. From the face of the opinion it appears that the only witnesses were Camargo, three managerial employees (Gary Beeson, Mike Dominisse, and human resources director John Clemente) whom Camargo accused of failing to respond to her complaints, and Anita Evridge, an employee who testified in Camargo's support as to one incident. The employees or ex-employees whom Camargo accused of harassing her are not said to have testified.

The opinion summarizes the parties' "positions" on the factual and legal questions posed by the grievance. Finally, in the section headed "Award," the opinion finds as follows:

1. Camargo's grievance is arbitrable. The parties to collective bargaining agreements generally understand them to impliedly incorporate federal and state antidiscrimination statutes. By retaining the antidiscrimination provision of the CBA after the United States Supreme Court had held that sexual harassment is a form of sexual discrimination under federal law, the parties here had demonstrated the intent to prohibit sexual harassment under the CBA.

2. The standards applicable to a claim of sexual harassment under the CBA are those defined in recent decisions from the United States Supreme Court (*Harris v. Forklift Systems, Inc.* (1993) 510 U.S. 17 [114 S.Ct. 367, 126 L.Ed.2d 295]), the Ninth Circuit (*Steiner v. Showboat Operating Co.* (9th Cir. 1994) 25 F.3d 1459), and the California Court of Appeal (*Accardi v. Superior Court* (1993) 17 Cal.App.4th 341 [21 Cal.Rptr.2d 292]).

3. Plaintiff's claim for "sexual harassment and/or discrimination" fails on the merits. "There were sexually harassing incidents prior to July, 1995, but those incidents were remote in time from the filing of the grievance in February, 1997. In addition, . . . those incidents cannot be seen as part of a continuing pattern of harassment which continued into 1996 and 1997. It was not demonstrated that the Company's failure to promote the Grievant to the Lead Person position when her father retired in 1995 was the result of sexual discrimination. Finally, the incidents beginning in late 1996 and continuing into 1997 show that the Grievant was subject to a hostile work environment, but the incidents and the resulting hostile environment were not gender-based and were not the result of sexual harassment. To prevail, the Union needed to demonstrate with respect to the incidents in 1996 and

1997 that 'if the (Grievant) had been a man she would not have been treated in the same manner.' See, *Accardi, supra* [17 Cal.App.4th 341]. Since there was no showing to this effect, the grievance must be denied."

*The union's petition to vacate the award.*

On September 4, 1998, the union filed a petition in San Joaquin County Superior Court to vacate the arbitrator's award under Code of Civil Procedure section 1286.2, subdivision (d).

The company opposed the petition, moved to confirm the arbitrator's award, and removed the case to the United States District Court for the Eastern District of California pursuant to 28 United States Code section 1441(b).

On November 19, 1998, the district court entered an order denying the union's motion and granting the company's motion. However, the court also stated: "Because the arbitration clause of the collective bargaining agreement limits the scope of arbitration to the 'meaning and application of and compliance with the provisions of this Agreement' and denies the arbitrator 'the power to alter or amend the terms of this Agreement,' the arbitrator's decision can only be understood [as] a determination of whether there was a violation of the collective bargaining agreement. It neither implicates the employee's statutory rights under Title VII, nor her right to bring statutory claims to a judicial forum. See *Doyle v. Raley's, Inc.* [(9th Cir. 1998) 158 F.3d 1012]. Only the Union was limited to bringing the grievance to arbitration; Ms. Camargo was not precluded by the agreement from filing her own separate Title VII claim."

*The FEHA complaint.*

On November 17, 1998, Camargo filed a complaint for damages in San Joaquin County Superior Court against CPCC, CNA Insurance Company, Gary Beeson, Mike Dominisse, Richard Firneno, Mike O'Dell, and Doe defendants.[1] The complaint stated causes of action for sexual discrimination (Gov. Code, § 12940, subd. (a)), sexual harassment (Gov. Code, § 12940,

---

[1]CNA Insurance Company and Firneno are not parties to this appeal.

former subd. (h)(1) [now (j)(1)]), and intentional infliction of emotional distress. All three causes of action alleged that defendants had engaged in a "pattern of severe and pervasive abuse was evidenced by conduct including but not limited to the following: (1) the daily articulation of unwelcome and sexually motivated comments, epithets, and slurs; (2) the inscription of profane and sexually derogatory statements on work areas occupied by plaintiff; (3) the rendering of obscene and sexually graphic sketches in various mediums throughout the workplace; (4) the employment of physical props to illustrate degrading representations of female anatomy; (5) the unlawful confinement of plaintiff against her will through the use of physical threats and abuses of managerial authority; and (6) the iteration of abusive and sexually graphic verbal commentaries." The complaint further alleged that the company and its managerial employees knew of this conduct but took no steps to prevent or correct it. It also alleged that plaintiff was wrongly denied a promotion due to gender. It noted that plaintiff had filed a sex discrimination claim with DFEH and had received a right-to-sue letter dated June 12, 1998; however, it did not specifically allege which persons or entities were named in the DFEH claim.

Defendants CPCC, Beeson, Dominisse, and O'Dell demurred to the complaint on January 15, 1999. Defendants primarily alleged that all three causes of action were collaterally estopped by the judicially confirmed arbitration award against plaintiff, as to which defendants requested judicial notice. They also alleged that employees could not be liable for discrimination in any event, that employees could not be liable for harassment if they did not personally participate in the harassment, that plaintiff failed to exhaust administrative remedies as to defendant O'Dell on the second cause of action, and that her third cause of action was barred by the statute of limitations (Code Civ. Proc., § 340).

After plaintiff opposed the demurrer and defendants replied, the trial court held a hearing on February 18, 1999. The court thereafter entered a minute order sustaining the demurrer without leave to amend and a "statement of grounds" reciting that the demurrer was sustained on all grounds raised therein.

Plaintiff appeals from the ensuing judgment dismissing her complaint.

DISCUSSION

I

*Standard of review.*

■ "On appeal from a judgment dismissing an action after sustaining a demurrer without leave to amend, the standard of review is well settled. The reviewing court gives the complaint a reasonable interpretation, and treats the demurrer as admitting all material facts properly pleaded. . . . The court does not, however, assume the truth of contentions, deductions or conclusions of law. . . . he judgment must be affirmed 'if any one of the several grounds of demurrer is well taken. . . .' . . . However, it is error for a trial court to sustain a demurrer when the plaintiff has stated a cause of action under any possible legal theory. . . ." (*Aubry v. Tri-City Hospital Dist.* (1992) 2 Cal.4th 962, 966-967 [9 Cal.Rptr.2d 92, 831 P.2d 317], citations omitted.)

II

*No collateral estoppel of FEHA claim by prior arbitration of contractual claim under the CBA.*

Plaintiff contends the trial court erred by sustaining the demurrer on grounds of collateral estoppel because arbitration of *contractual* claims under a collective bargaining agreement, even if those claims sound in sexual discrimination or harassment, cannot preclude a union employee from filing suit to assert *statutory* antidiscrimination claims under the FEHA. On the record presented in this case, we agree.

*Collateral estoppel.*

■ "Collateral estoppel is one of two aspects of the doctrine of res judicata. In its narrowest form, res judicata ' "precludes parties or their privies from relitigating a *cause of action* finally resolved in a prior proceeding." ' . . . But res judicata also includes a broader principle, commonly termed collateral estoppel, under which an *issue* ' "necessarily decided in [prior] litigation [may be] conclusively determined *as [against] the parties [thereto] or their privies* . . . in a subsequent lawsuit on a *different* cause of action. . . ." ' " (*Vandenberg v. Superior Court* (1999) 21 Cal.4th 815, 828

[88 Cal.Rptr.2d 366, 982 P.2d 229] (*Vandenberg*), original italics, citations omitted.)

"Collateral estoppel (like the narrower 'claim preclusion' aspect of res judicata) is intended to preserve the integrity of the judicial system, promote judicial economy, and protect litigants from harassment by vexatious litigation. . . . However, even where the minimal prerequisites for invocation of the doctrine are present, collateral estoppel ' "is not an inflexible, universally applicable principle; policy considerations may limit its use where the . . . underpinnings of the doctrine are outweighed by other factors." ' " (*Vandenberg, supra*, 21 Cal.4th at p. 829, citation omitted.)

*Applicable case law.*

A. *Federal case law.*

■  Because the FEHA has the same objectives as its federal counterpart and model, title VII of the federal Civil Rights Act of 1964 (42 U.S.C. § 2000e et seq.), California courts construing the FEHA often look for guidance to federal case law construing title VII. (*Torrez v. Consolidated Freightways Corp.* (1997) 58 Cal.App.4th 1247, 1259 [68 Cal.Rptr.2d 792].)

1. *Gardner-Denver.*

■  The United States Supreme Court long ago addressed the main issue of our case: whether arbitration of a discrimination claim under a collective bargaining agreement precludes the claimant from later filing a lawsuit alleging a statutory discrimination claim. In its seminal decision on point, *Alexander v. Gardner-Denver Co.* (1974) 415 U.S. 36 [94 S.Ct. 1011, 39 L.Ed.2d 147] (*Gardner-Denver*), the court held that such an arbitration had no preclusive effect under title VII. As we shall explain, that holding remains good law and applies equally to the FEHA.

In *Gardner-Denver*, the plaintiff, an African-American employee of the defendant company and a union member, filed a grievance alleging wrongful discharge under the CBA in force between the company and his union. The CBA, like the one in our case, prohibited discrimination against employees "on account of race, color, religion, sex, national origin, or ancestry." (*Gardner-Denver, supra*, 415 U.S. at p. 39 [94 S.Ct. at p. 1015, 39 L.Ed.2d at p. 153].) Also like the CBA in our case, it provided for compulsory arbitration of grievances, required the arbitrator's decision to be based solely

on interpretation of the CBA, and made that decision final and binding on all parties. (*Id.* at pp. 41-42 [94 S.Ct. at pp. 1016-1017, 39 L.Ed.2d at p. 154].)

Although the plaintiff's grievance in *Gardner-Denver* did not expressly allege racial discrimination, the plaintiff filed a racial discrimination charge with the Colorado Civil Rights Commission, which referred it to the Equal Employment Opportunity Commission (EEOC), before the arbitration hearing. (415 U.S. at pp. 39, 42 [94 S.Ct. at pp. 1015-1017, 39 L.Ed.2d at pp. 153-154].) At the hearing, the plaintiff testified that his wrongful discharge was due to racial discrimination. (*Id.* at p. 42 [94 S.Ct. at pp. 1016-1017, 39 L.Ed.2d at p. 155].) The arbitrator ruled that the plaintiff had been discharged for just cause; he did not mention the racial discrimination claim. (*Ibid.*)

After the EEOC rejected the plaintiff's claim and notified him of his right to sue, the plaintiff brought suit under title VII in United States District Court. (*Gardner-Denver, supra,* 415 U.S. at p. 43 [94 S.Ct. at p. 1017, 39 L.Ed.2d at p. 155].) The district court dismissed the suit on the ground of election of remedies: having voluntarily submitted his grievance to final arbitration, the plaintiff was bound by the arbitrator's decision, which considered the plaintiff's discrimination claim and resolved it adversely to him (even though the decision did not mention that claim). (*Ibid.*) The Court of Appeals for the Tenth Circuit affirmed. (*Ibid.*)

The Supreme Court reversed. Pointing out that the policy considerations applying to "election of remedies" were the same, on these facts, as those that apply to res judicata and collateral estoppel (*Gardner-Denver, supra,* 415 U.S. at p. 49 & fn. 10 [94 S.Ct. at p. 1020, 39 L.Ed.2d at p. 159]), the court explained why, "[w]hatever doctrinal label is used," the result would be the same: The arbitration did not bar the plaintiff from filing a title VII suit because contractual arbitration under the CBA did not and could not resolve his claim that the company violated his statutory rights.

The court began by expounding the important purposes of title VII and noting Congress's decision to give private parties a significant role in enforcing the statute through the courts. (*Gardner-Denver, supra,* 415 U.S. at pp. 44-45 [94 S.Ct. at pp. 1017-1018, 39 L.Ed.2d pp. 155-156].) The court pointed out that, although "Title VII does not speak expressly to the relationship between federal courts and the grievance-arbitration machinery of collective-bargaining agreements," it gives federal courts "plenary powers to enforce the statutory requirements," it specifies the jurisdictional prerequisites to filing suit, and it does not state that prior arbitration forecloses an

individual's right to file suit or divests the federal courts of jurisdiction. (*Id.* at p. 47 [94 S.Ct. at p. 1019, 39 L.Ed.2d at pp. 157-158].) On the contrary, title VII "provides for consideration of employment-discrimination claims in several forums. . . . And, in general, submission of a claim to one forum does not preclude a later submission to another. [Fn. omitted.]" (*Id.* at pp. 47-48 [94 S.Ct. at p. 1019, 39 L.Ed.2d at p. 158).) Thus, the court concluded: ". . . Title VII's purpose and procedures strongly suggest that an individual does not forfeit his private cause of action if he first pursues his grievance to final arbitration under the nondiscrimination clause of a collective-bargaining agreement." (*Id.* at p. 49 [94 S.Ct. at p. 1020, 39 L.Ed.2d at p. 158].)

The court then explained why such arbitration cannot preclude title VII suits: "In submitting his grievance to arbitration, an employee seeks to vindicate his contractual right under a collective-bargaining agreement. By contrast, in filing a lawsuit under Title VII, an employee asserts independent statutory rights accorded by Congress. The distinctly separate nature of these contractual and statutory rights is not vitiated merely because both were violated as a result of the same factual occurrence. And certainly no inconsistency results from permitting both rights to be enforced in their respectively appropriate forums." (*Gardner-Denver, supra,* 415 U.S. at pp. 49-50 [94 S.Ct. at p. 1020, 39 L.Ed.2d at p. 159].)

The court held further that a union cannot waive its employees' statutory rights under title VII by entering into a CBA with an employer because of "the paramount congressional purpose behind Title VII," and that for the same reason an employee cannot waive title VII rights by submitting a grievance to arbitration under a CBA. (*Gardner-Denver, supra,* 415 U.S. at pp. 51-52 [94 S.Ct. at p. 1021, 39 L.Ed.2d at p. 160].)

Finally, the court rejected the company's proposed rule that "federal courts should defer to arbitral decisions on discrimination claims where: (i) the claim was before the arbitrator; (ii) the collective-bargaining agreement prohibited the form of discrimination charged in the suit under Title VII; and (iii) the arbitrator has authority to rule on the claim and to fashion a remedy." (*Gardner-Denver, supra,* 415 U.S. at pp. 55-56 [94 S.Ct. at p. 1023, 39 L.Ed.2d at p. 162].) After noting that this rule would be open to many of the objections applicable to a rule of absolute preclusion (*id.* at p. 56 [94 S.Ct. at p. 1024, 39 L.Ed.2d at pp. 162-163]), the court held: "Arbitral procedures, while well suited to the resolution of contractual disputes, make arbitration a comparatively inappropriate forum for the *final* resolution of rights created by Title VII." (*Ibid.,* italics added.)

First, the arbitrator's "task is to effectuate the intent of the parties rather than the requirements of enacted legislation. Where the collective-bargaining agreement conflicts with Title VII, the arbitration must follow the agreement." (*Gardner-Denver, supra,* 415 U.S. at pp. 56-57 [94 S.Ct. at p. 1024, 39 L.Ed.2d at p. 163].) Second, although "the tension between contractual and statutory objectives may be mitigated where a collective-bargaining agreement contains provisions facially similar to those of Title VII . . . other facts may still render arbitral processes comparatively inferior to judicial processes in the protection of Title VII rights." (*Id.* at p. 57 [94 S.Ct. at p. 1024, 39 L.Ed.2d at p. 163].) These facts include, among others, (1) the relative informality of the factfinding process under arbitration in general and (2) the union's exclusive control over the presentation of grievances under CBA's (notwithstanding that the union's interests may not always coincide with an individual employee's interests in vigorously pursuing a discrimination claim). (*Id.* at p. 58 & fn. 19 [94 S.Ct. at p. 1024, 39 L.Ed.2d at pp. 163-164].)[2]

However, the court did not hold that a court could give no weight to prior arbitration of a discrimination claim. Rather, the court said, "The arbitral decision may be admitted as evidence and accorded such weight as the court deems appropriate." (*Gardner-Denver, supra,* 415 U.S. at p. 60 [94 S.Ct. at p. 1025, 39 L.Ed.2d at p. 165].) The court further explained: "We adopt no standards as to the weight to be accorded an arbitral decision, since this must be determined in the court's discretion with regard to the facts and circumstances of each case. Relevant factors include the existence of provisions in the collective bargaining agreement that conform substantially with Title VII, the degree of procedural fairness in the arbitral forum, adequacy of the record with respect to the issue of discrimination, and the special competence of particular arbitrators. Where an arbitral determination gives full consideration to an employee's Title VII rights, a court may properly accord it great weight. This is especially true where the issue is solely one of fact, specifically addressed by the parties and decided by the arbitrator on the basis of an adequate record. But courts should ever be mindful that Congress, in enacting Title VII, thought it necessary to provide a judicial forum for the ultimate resolution of discriminatory employment claims. It is the duty of courts to assure the full availability of this forum." (415 U.S. at p. 60, fn. 21 [94 S.Ct. at p. 1025, 39 L.Ed.2d at p. 165].)

---

[2] The court later disapproved *Gardner-Denver*'s discussion of arbitration so far as it applies to whether an employee's statutory claim must be arbitrated in the first place. (See discussion, *post.*) However, as we shall show, the court has never held this analysis inapplicable to the collateral estoppel effect of prior arbitration on a subsequent lawsuit—the point at issue in *Gardner-Denver* and in our case.

### 2. Decisions following Gardner-Denver.

### a. Barrentine.

In *Barrentine v. Arkansas-Best Freight System* (1981) 450 U.S. 728 [101 S.Ct. 1437, 67 L.Ed.2d 641]) (*Barrentine*), the Supreme Court relied on *Gardner-Denver* to hold that an employee could bring a federal suit alleging a violation of the minimum wage provisions of the Fair Labor Standards Act (29 U.S.C. § 201 et seq.) (FLSA), even though he had already unsuccessfully submitted a claim based on the same facts to a joint grievance committee under his union's CBA.

The court noted: "Two aspects of national labor policy are in tension in this case. The first, reflected in statutes governing relationships between employers and unions, encourages the negotiation of terms and conditions of employment through the collective-bargaining process. The second, reflected in statutes governing relationships between employers and their individual employees, guarantees covered employees specific substantive rights. A tension arises between these policies when the parties to a collective-bargaining agreement make an employee's entitlement to substantive statutory rights subject to contractual dispute-resolution procedures." (*Barrentine, supra,* 450 U.S. at pp. 734-735 [101 S.Ct. at p. 1441, 67 L.Ed.2d at p. 650].) Relying on *Gardner-Denver*, the court resolved the tension against a finding of claim preclusion: ". . . . Not all disputes between an employee and his employer are suited for binding resolution in accordance with the procedures established by collective bargaining. While courts should defer to an arbitral decision where the employee's claim is based on rights arising out of the collective-bargaining agreement, different considerations apply where the employee's claim is based on rights arising out of a statute designed to provide minimum substantive guarantees to individual workers." (*Barrentine, supra,* 450 U.S. at p. 737 [101 S.Ct. at p. 1443, 67 L.Ed.2d at p. 651.) The court held that *Gardner-Denver* could not be distinguished based on the difference between title VII and the FLSA because both acts were intended to establish fundamental, nonwaivable collective rights for employees. (*Barrentine, supra,* 450 U.S. at pp. 738-741 [101 S.Ct. at pp. 1443-1445, 67 L.Ed.2d at pp. 652-654].)

Finally, the court reiterated *Gardner-Denver*'s observations that unions acting in good faith may choose not to pursue individual employees' statutory claims vigorously in arbitration (*Barrentine, supra,* 450 U.S. at p. 742 [101 S.Ct. at pp. 1445-1446, 67 L.Ed.2d at p. 641]) and that even where unions do pursue such claims vigorously the arbitrator may not have the

contractual authority to apply statutory law for the employee's benefit: "An arbitrator's power is both derived from, and limited by, the collective-bargaining agreement. . . . His task is limited to construing the meaning of the collective-bargaining agreement so as to effectuate the collective intent of the parties. . . . [Thus, the arbitrator effectuating the intent of the parties] may issue a ruling that is inimical to the public policies underlying the [statute], thus depriving an employee of protected statutory rights." (*Id.* at p. 744 [101 S.Ct. at pp. 1446-1447, 67 L.Ed.2d at p. 656].)

### b. *McDonald.*

In *McDonald v. West Branch* (1984) 466 U.S. 284 [104 S.Ct. 1799, 80 L.Ed.2d 302] (*McDonald*) the court relied on *Gardner-Denver* and *Barrentine* to hold that prior arbitration of a statutory claim (42 U.S.C. § 1983) under a CBA had no res judicata or collateral estoppel effect on the employee's right to file a subsequent lawsuit. (*McDonald*, at p. 292 [104 S.Ct. at p. 1804, 80 L.Ed.2d at p. 310].) The court explained: "The Court of Appeals justified its application of res judicata and collateral estoppel in part by stating that '[t]he parties have agreed to settle this dispute through the private means of arbitration.' In both *Gardner-Denver* and *Barrentine*, however, we rejected similar contentions. [Citations.] For example, in *Gardner-Denver* we considered the argument that the arbitration provision of the collective-bargaining agreement waived the employee's right to bring a Title VII action. We found this contention unpersuasive, however, concluding that '[t]he rights conferred [by Title VII] can form no part of the collective-bargaining process since waiver of these rights would defeat the paramount congressional purpose behind Title VII.' [Citation.] Similarly, because preclusion of a judicial action would gravely undermine the effectiveness of § 1983, we must reject the Court of Appeals' reliance on and deference to the provisions of the collective-bargaining agreement." (*Id.* at p. 292, fn. 12 [104 S.Ct. at p. 1804, 80 L.Ed.2d at p. 310].)

### 3. *Gilmer.*

In *Gilmer v. Interstate/Johnson Lane Corp.* (1991) 500 U.S. 20 [111 S.Ct. 1647, 114 L.Ed.2d 26] (*Gilmer*), the Supreme Court appeared to create a conflict with its own holding in *Gardner-Denver.* As the court subsequently explained, however, the conflict is more apparent than real.

In *Gilmer,* the court held that a securities representative whose registration application with the New York Stock Exchange provided for compulsory arbitration of controversies with his employer could be required to arbitrate a claim under the Age Discrimination in Employment Act (29 U.S.C. § 621

et seq.) (ADEA) rather than initially filing suit. (*Gilmer, supra,* 500 U.S. at pp. 23-24 [11 S.Ct. at pp. 1656-1658, 114 L.Ed.2d at pp. 35-36].) Even though the ADEA, like title VII, furthers important social policies and not merely individual employees' rights, the court found that Congress had not precluded the compulsory arbitration of claims under the ADEA. (*Gilmer,* at p. 29 [111 S.Ct. at pp. 1653-1654, 114 L.Ed.2d at p. 39].)

The court also brushed aside Gilmer's challenges to the adequacy of arbitration procedures for resolving ADEA claims: "[I]n our recent arbitration cases we have already rejected most of these arguments as insufficient to preclude arbitration of statutory claims. Such generalized attacks on arbitration 'res[t] on suspicion of arbitration as a method of weakening the protections afforded in the substantive law to would-be claimants,' and as such, they are 'far out of step with our current strong endorsement of the federal statutes favoring this method of resolving disputes.' [Citation.]" (*Gilmer, supra,* 500 U.S. at p. 30 [111 S.Ct. at p. 1654, 114 L.Ed.2d at p. 39].) The court specifically rejected the "view" of *Gardner-Denver* that arbitration was "inferior to the judicial process for resolving statutory claims": "That 'mistrust of the arbitral process' . . . has been undermined by our recent arbitration decisions. [Citation.] '[W]e are well past the time when judicial suspicion of the desirability of arbitration and of the competence of arbitral tribunals inhibited the development of arbitration as an alternative means of dispute resolution.' [Citation.]" (*Gilmer, supra,* 500 U.S. at pp. 34-35, fn. 5 [111 S.Ct. at p. 1656, 114 L.Ed.2d at pp. 42-43].)

Finally, the court distinguished *Gardner-Denver, Barrentine,* and *McDonald,* on which Gilmer had sought to rely: "*First, those cases did not involve the issue of the enforceability of an agreement to arbitrate statutory claims. Rather, they involved the quite different issue whether arbitration of contract-based claims precluded subsequent judicial resolution of statutory claims.* Since the employees there had not agreed to arbitrate their statutory claims, and the labor arbitrators were not authorized to resolve such claims, the arbitration in those cases understandably was held not to preclude subsequent statutory actions. *Second, because the arbitration in those cases occurred in the context of a collective-bargaining agreement, the claimants there were represented by their unions in the arbitration proceedings. An important concern therefore was the tension between collective representation and individual statutory rights, a concern not applicable to the present case.* Finally, those cases were not decided under the F[ederal] A[rbitration] A[ct], which . . . reflects a 'liberal federal policy favoring arbitration agreements.' [Citation.]" (*Gilmer, supra,* 500 U.S. at p. 35 [111 S.Ct. at p. 1657, 114 L.Ed.2d at p. 43], italics added.)

4. *Wright.*

In *Wright v. Universal Maritime Service Corp.* (1998) 525 U.S. 70 [119 S.Ct. 391, 142 L.Ed.2d 361] (*Wright*), the Supreme Court held (reversing the Fourth Circuit Court of Appeals) that an employee could not be compelled under his CBA to arbitrate a claim alleging discrimination under the Americans with Disabilities Act (ADA) (42 U.S.C. § 12101 et seq.), rather than filing suit. (525 U.S. at pp. 72-74, 82 [119 S.Ct. at p. 397, 142 L.Ed.2d at pp. 366-368, 372].) Though declining to hold that a union may never waive its members' right to sue on statutory antidiscrimination claims by negotiating an arbitration clause in a CBA, the court held that any such waiver must be " 'clear and unmistakable.' [Citations.]" (525 U.S. at p. 80 [119 S.Ct. at p. 396, 142 L.Ed.2d at p. 371].)

The court acknowledged "some tension" between *Gardner-Denver* and *Gilmer.* (*Wright, supra,* 525 U.S. at p. 76 [111 S.Ct. at p. 395, 142 L.Ed.2d at p. 369].) However, for purposes of this case, the court reaffirmed the continuing validity of *Gardner-Denver* and distinguished *Gilmer*: ". . . *Gardner-Denver* at least stands for the proposition that the right to a federal judicial forum is of sufficient importance to be protected against less-than-explicit union waiver in a CBA. The CBA in this case does not meet that standard. Its arbitration clause is very general, providing for arbitration of '[m]atters under dispute,' . . . which could be understood to mean matters in dispute under the contract. And the remainder of the contract contains no explicit incorporation of statutory antidiscrimination requirements. . . . The Fourth Circuit relied upon the fact that the equivalently broad arbitration clause in *Gilmer* . . . was held to embrace federal statutory claims. *But Gilmer involved an individual's waiver of his own rights, rather than a union's waiver of the rights of represented employees . . . .*" (*Wright,* at pp. 80-81 [111 S.Ct. at pp. 396-397, 142 L.Ed.2d at p. 371], italics added.)[3]

The facts of *Wright* did not raise any issue of collateral estoppel. However, *Wright* cites not only the anti-collateral-estoppel holding of *Gardner-Denver,* but also those of *Barrentine* and *McDonald* with apparent approval. (*Wright, supra,* 525 U.S. at pp. 75-76 [111 S.Ct. p. 142 L.Ed.2d at p. 368].)

In short, it appears from *Wright* that the Supreme Court has not extended and will not extend *Gilmer*'s holding to cover CBA's or the collateral

---

[3]Even before *Wright* was decided, the California courts had concluded that *Gilmer* did not overrule or supersede *Gardner-Denver,* except so far as *Gardner-Denver* could be read to convey a generalized judicial suspicion of arbitration. (*Brosterhous v. State Bar* (1995) 12 Cal.4th 315, 332 [48 Cal.Rptr.2d 87, 906 P.2d 1242]; *Torrez v. Consolidated Freightways Corp., supra,* 58 Cal.App.4th 1247, 1255.)

estoppel effect of arbitrations under CBA's, if any, on subsequent litigation. On those topics (subject to the caveat that a CBA may someday be read to waive the statutory right to sue if it meets the "clear and unmistakable" test), *Gardner-Denver* and its progeny still define the current standard in federal law.[4]

### B. *California appellate case law.*

The California Courts of Appeal have also issued decisions in this area which appear to conflict; however, closer inspection reveals that there is no fundamental inconsistency in these decisions.

#### 1. *Conner.*

In *Conner v. Dart Transportation Service* (1976) 65 Cal.App.3d 320 [135 Cal.Rptr. 259] (*Conner*), the Court of Appeal held that an employee who had lost a grievance under the procedure defined in his CBA was collaterally estopped to file suit raising the same issues. However, the decision is not on point because the employee's suit alleged only common law torts, not statutory claims. (*Id.* at p. 322.) (Perhaps for that reason, *Conner* does not mention *Gardner-Denver*.)

#### 2. *Torrez.*

In *Torrez v. Consolidated Freightways Corp., supra,* 58 Cal.App.4th 1247 (*Torrez*), the Court of Appeal held that an employee could not be forced by his CBA's mandatory arbitration clause to arbitrate a statutory discrimination claim under the FEHA in the first instance, rather than immediately filing suit. In so holding, the court relied on *Gardner-Denver* and distinguished *Gilmer.* (*Torrez,* at pp. 1251-1259.)[5]

*Torrez* acknowledged that *Gardner-Denver* dealt with a federal rather than a state antidiscrimination statute, but held: "[T]his is a distinction without a

---

[4]In *Doyle v. Raley's Inc., supra,* 158 F.3d 1012—a decision which came out before *Wright* —the Ninth Circuit followed *Gardner-Denver* to hold that an employee's signed acknowledgment of an arbitration clause in her CBA, which did not expressly cover statutory claims, did not waive her right to file suit under federal *and state* antidiscrimination statutes, including the FEHA. As noted, the federal district court in this case cited *Doyle v. Raley's Inc.* to support the proposition that the arbitration award did not bar Camargo from filing suit under the FEHA.

[5]The court also concluded that the Fourth Circuit Court of Appeals, which had held that even an employee's statutory discrimination claims were subject to compulsory arbitration in the first instance under a CBA, had misinterpreted both *Gardner-Denver* and *Gilmer.* (*Torrez, supra,* 58 Cal.App.4th at pp. 1249-1250, 1256-1259.) In light of the United States Supreme Court's later reversal of the Fourth Circuit on a related point in *Wright, supra,* 525 U.S. 70 [119 S.Ct. 391, 142 L.Ed.2d 361], *Torrez's* conclusion was prophetic.

difference. Numerous courts have applied the *Gilmer/Gardner-Denver* rule to state antidiscrimination statutes [such as the FEHA] that are modeled after title VII. [Citations.] In a recent federal case discussing the FEHA, the court held 'that Plaintiff's FEHA claim, like his federal statutory claims, is not barred by the mandatory arbitration provisions of his union's CBA. The rights protected by FEHA deserve the same protection that the Court has afforded the ADEA and the ADA, and the Court finds no reason to apply a different rule to state statutory claims than governs federal claims. Moreover, the commentary in *Spellman* [*v. Securities, Annuities & Ins. Services, Inc.* (1992) 8 Cal.App.4th 452, 461 [10 Cal.Rptr.2d 427]] indicates that if directly confronted with the issue, the California [courts] would likely find that *Gardner-Denver* continues to govern in the context of collective bargaining agreements. . . .' [Citations.]" (*Torrez, supra,* 58 Cal.App.4th at pp. 1259-1260.)

*Torrez* is not on point for our case because it does not address collateral estoppel. However, so far as it holds that *Gardner-Denver,* a decision which does address collateral estoppel, is controlling authority even as to FEHA claims, *Torrez* is strong persuasive authority against the premise that arbitration of a discrimination claim under a CBA collaterally estops an employee's FEHA suit.

### 3. *Kelly.*

In *Kelly v. Vons Companies, Inc.* (1998) 67 Cal.App.4th 1329, 1332 [79 Cal.Rptr.2d 763] (*Kelly*), the Court of Appeal held that employees' arbitration of common law claims under a CBA collaterally estopped their subsequent lawsuit so far as it raised the same issues. The court relied on *Conner, supra,* 65 Cal.App.3d 320, on the rule of strong judicial deference to arbitration enunciated in *Moncharsh v. Heily & Blase* (1992) 3 Cal.4th 1 [10 Cal.Rptr.2d 183, 832 P.2d 899], and on the premise that collateral estoppel is appropriately applied to arbitration as a matter of policy where the arbitration had the elements of an adjudicatory procedure.[6] (*Kelly, supra,* 67 Cal.App.4th at pp. 1335-1337.)

*Kelly* distinguished *Gardner-Denver* and its progeny, on which the employees sought to rely, on the following grounds: (1) Federal cases do not

---

[6]As to this point, *Kelly* noted elsewhere that the arbitration at issue "was judicial in character [citation] [because] [t]he union was permitted to call and cross-examine witnesses, present oral argument, and subpoena documents. The arbitrator issued a written decision carefully explaining the reasons for his ruling. Although there was no right to judicial review of the factual and legal findings, the union could have petitioned to vacate or correct the arbitration award under Code of Civil Procedure sections 1286.2 and 1286.6." (67 Cal.App.4th at p. 1339.)

bind California courts construing state law. (*Kelly*, *supra*, 67 Cal.App.4th at p. 1337.) (2) So far as the federal decisions might apply, the statutes they address "provide 'minimum substantive guarantees to individual workers,' and contemplate that aggrieved employees shall have access to the courts. [Citation.] There is no similar legislative dictate against resolving common law claims by arbitration [citing and distinguishing *Torrez, supra*, 58 Cal.App.4th 1247]." (*Id.* at p. 1338.) (3) There was no showing in this case of lack of privity between the employees and the union, and no allegation that the union failed to represent their interests adequately. (*Ibid.*) (4) Statutory antidiscrimination schemes might conflict with terms negotiated in a CBA, but a CBA is unlikely to condone common law torts; thus, an arbitrator charged with interpreting a CBA will not likely be required to find that it conflicts with the common law. (*Ibid.*) In short, "[t]he concerns underlying the Supreme Court's decisions in [*Gardner-Denver*], *Barrentine* and *McDonald* do not apply when labor arbitration findings are given preclusive effect *in state common law actions.*" (*Id.* at pp. 1338-1339, italics added.)

### 4. *Deschene.*

In *Deschene v. Pinole Point Steel Co.* (1999) 76 Cal.App.4th 33 [90 Cal.Rptr.2d 15] (*Deschene*), the Court of Appeal followed *Torrez*, to hold that under the *Gardner-Denver* rule an employee who initiated arbitration under his CBA but then withdrew from the process was not precluded from filing suit for wrongful termination in violation of public policy and for health-based discrimination under the FEHA, because the CBA did not encompass those causes of action. (*Deschene*, at pp. 46-49.)

### 5. *Vasquez.*

In *Vasquez v. Superior Court* (2000) 80 Cal.App.4th 430, 434-436 [95 Cal.Rptr.2d 294], the Court of Appeal followed *Wright, supra*, 525 U.S. 70 [119 S.Ct. 391, 142 L.Ed.2d 361], and *Deschene, supra*, 76 Cal.App.4th 33, to hold that an employee's CBA did not contain a "clear and unmistakable" waiver of his statutory right to sue under the ADA and the FEHA because the CBA did not expressly incorporate those statutes or indicate that it required compliance with federal and state antidiscrimination law. Like *Deschene, and Torrez, Vasquez* did not address the collateral estoppel effect of a completed arbitration under a CBA on an employee's statutory right to sue.

### C. *Vandenberg.*

In a decision filed after the briefing in this case was completed, the California Supreme Court held that private arbitration in general has no

collateral estoppel effect as to *nonparties.* (*Vandenberg, supra,* 21 Cal.4th 815.) Some of the court's reasons for its holding are not germane here. However, the court articulated a rationale for caution in giving collateral estoppel effect to arbitration which applies directly to the situation presented in our case.

First, the court pointed out that a finding of collateral estoppel ultimately rests on the court's assessment of the equities in the case. "Whether collateral estoppel is fair and consistent with public policy in a particular case depends in part upon the character of the forum that first decided the issue later sought to be foreclosed. In this regard, courts consider the judicial nature of the prior forum, i.e., its legal formality, the scope of its jurisdiction, and its procedural safeguards, particularly including the opportunity for judicial review of adverse rulings. [Citations.]" (*Vandenberg, supra,* 21 Cal.4th at p. 829.)

Second, relying on its own holding in *Moncharsh v. Heily & Blase, supra,* 3 Cal.4th 1 (*Moncharsh*), the court explained that the judiciary and the Legislature now generally favor private contractual arbitration because they wish to encourage parties to agree to resolve disputes informally and expeditiously—a method of dispute resolution which does not always produce results entitled to collateral estoppel effect. " 'In cases involving private arbitration, "[t]he scope of arbitration is . . . a matter of agreement between the parties" . . . , and " '[t]he powers of an arbitrator are limited and circumscribed by the agreement or stipulation of submission.' " . . .' (*Moncharsh, supra,* 3 Cal.4th [at pp.] 8-9.) An independent purpose of modern private arbitration statutes is to overcome earlier judicial hostility to arbitration agreements, and to ensure that such agreements, like other legally valid contracts, are enforced in accordance with their terms. (*Dean Witter Reynolds Inc.* v. *Byrd* (1985) 470 U.S. 213, 219-221 [105 S.Ct. 1238, 1241-1243, 84 L.Ed.2d 158] [discussing similar contemporaneously enacted provisions of [Federal Arbitration Act]].) Accordingly, policies favoring the efficiency of private arbitration . . . must sometimes yield to its fundamentally contractual nature, and to the attendant requirement that arbitration shall proceed *as the parties themselves have agreed.* (*Ibid.*)" (*Vandenberg, supra,* 21 Cal.4th at pp. 830-831, original italics, some citations omitted.)

Third, as explained in *Moncharsh,* judicial review of private arbitration is severely limited due to "the nature of the arbitral forum as an informal, expeditious, and efficient alternative means of dispute resolution." (*Vandenberg, supra,* 21 Cal.4th at p. 831.) This entails the parties' willingness to accept the possibility that an arbitrator may " 'reject a claim *that a party*

*might successfully have asserted in a judicial action.'* . . ." (*Id.* at p. 832, quoting *Moncharsh, supra,* 3 Cal.4th at p. 10, original italics, citation omitted.)

*Analysis.*

■ In this case, we need not decide whether an arbitration award of a FEHA claim under a CBA can ever be given collateral estoppel effect. Based on the authorities discussed above, we are confident that, if it can, at least two conditions must be satisfied, and neither is satisfied on the record presented in this appeal.

First, we believe that if the FEHA claims of a union member are to be finally resolved by arbitration (with the concomitant loss of a jury of one's peers)[7] , the agreement to do so in a CBA must be "clear and unmistakable." (*Wright, supra,* 525 U.S. at p. 80 [119 S.Ct. at p. 396, 142 L.Ed.2d at p. 371]; *Vasquez v. Superior Court, supra,* 80 Cal.App.4th at pp. 434-436.) That is not the case here. The arbitration clause of the CBA in our case does not provide for the arbitration of statutory FEHA claims. Rather, the CBA provides for arbitration of "any dispute, difference, or grievance . . . *as* [*sic*] the meaning and application of and compliance with the provisions of this Agreement" (italics added), and its antidiscrimination clause does not explicitly incorporate statutory requirements. Indeed, in the arbitration proceeding, CPCC argued that plaintiff's grievance based on sexual harassment was not arbitrable because the CBA "does not specifically address sexual harassment, . . . there is no evidence the parties intended that the prohibition of sex discrimination was intended to apply to sexual harassment, and . . . *such allegations are properly left to the courts and federal and state agencies enforcing equal employment laws.*" (Italics added.)

Second, the procedures of the arbitration must allow for the full litigation and fair adjudication of the FEHA claim. The present record, which arises on demurrer, sheds little light on the fairness of the procedures of the subject arbitration, on the extent of discovery that was allowed the parties, or on whether the arbitrator had any special competence in the adjudication of FEHA claims. These matters are all relevant to a determination whether the arbitration award should be given collateral estoppel effect. (*Gardner-Denver, supra,* 415 U.S. at p. 60, fn. 21 [94 S.Ct. at p. 1025, 39 L.Ed.2d at p. 165]; *Vandenberg, supra,* 21 Cal.4th at p. 829.)

We therefore conclude that, on the record presented, the rule of the United States Supreme Court in *Gardner-Denver, supra,* 415 U.S. 36 [94 S.Ct. 1011,

---

[7]A plaintiff seeking damages in a civil action under the FEHA has a right to a trial by jury. (*Asare v. Hartford Fire Ins. Co.* (1991) 1 Cal.App.4th 856, 869 [2 Cal.Rptr.2d 452].)

39 L.Ed.2d 147] should control and defendants have not shown that the arbitration award is entitled to collateral estoppel effect.[8] (See *Torrez, supra,* 58 Cal.App.4th 1247.)

Defendants' contrary arguments are unpersuasive. Defendants rely chiefly on *Kelly, supra,* 67 Cal.App.4th 1329, and *Conner, supra,* 65 Cal.App.3d 320. As we have explained, those decisions are not on point because they hold only that the arbitration of *common law* claims under a CBA collaterally estops a subsequent attempt to litigate *those* claims. (*Kelly, supra,* 67 Cal.App.4th at pp. 1335-1337; *Conner, supra,* 65 Cal.App.3d at p. 322.) *Conner* does not discuss statutory discrimination claims, and *Kelly* expressly distinguishes such claims from common law claims for purposes of collateral estoppel. (*Kelly, supra,* 67 Cal.App.4th at p. 1338.)

Defendants also rely on *Balasubramaniam v. County of Los Angeles**\* (Cal.App.). However, our Supreme Court has granted review in that case (review granted Apr. 12, 2000, S086385); therefore, the opinion of the Court of Appeal may not be cited as precedent. (Cal. Rules of Court, rules 976(d), 977(a).)

In addition, defendants attempt to distinguish *Gardner-Denver.* However, in order to do so they misdescribe its facts and its holding.

---

[8]Our conclusion is not altered by the recent opinion of our Supreme Court in *Armendariz v. Foundation Health Psychcare Services, Inc.* (2000) 24 Cal.4th 83 [99 Cal.Rptr.2d 745, 6 P.3d 669]. The pertinent holdings of the case are described by the Supreme Court as follows:

"In this case, we consider a number of issues related to the validity of a mandatory employment arbitration agreement, i.e., an agreement by an employee to arbitrate wrongful termination or employment discrimination claims rather than filing suit in court, which an employer imposes on a prospective or current employee as a condition of employment. The employees in this case claim that employees may not be compelled to arbitrate antidiscrimination claims brought under the California Fair Employment and Housing Act (FEHA) (Gov. Code, § 12900 et seq.) We conclude that such claims are in fact arbitrable *if* the arbitration permits an employee to vindicate his or her statutory rights. As explained, in order for such vindication to occur, the arbitration must meet certain minimum requirements, including neutrality of the arbitrator, the provision of adequate discovery, a written decision that will permit a limited form of judicial review, and limitations on the costs of arbitration." (24 Cal.4th at pp. 90-91.)

*Armendariz* fails to change our conclusion for the following reasons:

1. The case involves the question whether employees may be compelled to arbitrate an FEHA claim in the first instance; it does not discuss the question of the collateral estoppel effect to be given to the arbitrator's findings;

2. The agreement to arbitrate in *Armendariz* was not a collective bargaining agreement;

3. So far as the Supreme Court's opinion discloses, the employees in *Armendariz* did not contest that the arbitration agreement embraced FEHA claims;

4. In the instant case, the record sheds no light on the expertise of the arbitrator nor on the amount of discovery that was allowed the parties to the arbitration.

\*Reporter's Note: Review granted on April 12, 2000, S086385. On January 10, 2001, review was dismissed and the cause remanded to the Court of Appeal.

First, defendants assert—*citing only to a headnote*—that "[u]nlike Camargo, . . . the plaintiff had not agreed to arbitrate his claims." A reading of the decision itself quickly reveals defendants' mistake: the plaintiff *did* submit his grievance to arbitration. (*Gardner-Denver, supra,* 415 U.S. at pp. 42-43 [94 S.Ct. at pp. 1016-1017, 39 L.Ed.2d at pp. 154-155].)

Next, defendants assert that the plaintiff in *Gardner-Denver* made "no explicit claim of racial discrimination." Although they cite to the decision itself for this point, they have read it too hastily. The plaintiff *initially* made no explicit claim of discrimination, but he filed a DFEH claim before the arbitration began, and he testified at the arbitration hearing that he believed his firing was based on discrimination. (*Gardner-Denver, supra,* 415 U.S. at p. 42 [94 S.Ct. at pp. 1016-1017, 39 L.Ed.2d at pp. 154-155].)

Next, defendants assert that the arbitrator made no express finding as to discrimination. However, they ignore the lower courts' finding that the arbitrator had impliedly resolved the plaintiff's discrimination claim against him. (*Gardner-Denver, supra,* 415 U.S. at p. 43 [94 S.Ct. at p. 1017, 39 L.Ed.2d at p. 155].)

Defendants also assert irrelevantly that unlike the plaintiff in *Gardner-Denver*, Camargo has raised no claim under title VII. As we have already noted, for most purposes the distinction between title VII and the FEHA is "a distinction without a difference." (*Torrez, supra,* 58 Cal.App.4th at p. 1259; see *Doyle v. Raley's Inc., supra,* 158 F.3d 1012 [treating plaintiff's federal statutory claims and FEHA claims alike].) Defendants give no reason why the distinction should make a difference here, and we see none.[9]

More fundamentally, defendants mischaracterize the holding of *Gardner-Denver* by omission. They quote the opinion's rather obscure language about "the proper relationship between federal courts and the grievance-arbitration machinery of collective-bargaining agreements in the resolution and enforcement of an individual's rights to equal employment opportunities under Title VII of the Civil Rights Act of 1964" (*Gardner-Denver, supra,* 415 U.S. at p. 38 [94 S.Ct. at p. 1015, 39 L.Ed.2d at p. 152]), and call this "the narrow issue" the court decided. However, they ignore the substantive issues the court discussed in order to ascertain this "relationship." In particular, while

[9]In place of a reason, defendants merely cite the refusal of one California appellate court to apply federal case law discussing federal statutes to the question whether arbitration collaterally estops *common law* claims. (*Kelly, supra,* 67 Cal.App.4th at p. 1337.) This point is irrelevant here. Since *Kelly* is not a case about the FEHA, it is not authority for the proposition that title VII and the FEHA should be treated differently for collateral estoppel purposes.

asserting that Camargo submitted "her harassment and discrimination claims" to arbitration, defendants ignore the court's demonstration that discrimination claims submitted to contractual arbitration are not necessarily the same as those which could be brought under statutory law, and the court's conclusion that contractual arbitration of discrimination claims therefore has no preclusive effect on lawsuits under title VII. (415 U.S. at pp. 49-58 [94 S.Ct. at pp. 1020-1025, 39 L.Ed.2d at pp. 159-164].)

In a separate argument, defendants assert that the arbitrator's decision should collaterally estop Camargo's suit because the arbitrator decided only those issues submitted to him by the parties. In light of the federal and California case law we have discussed, this is precisely why the arbitrator's decision should *not* collaterally estop Camargo's suit. The only issues the arbitrator was empowered to decide were those presented under the CBA's boilerplate antidiscrimination clause, which did not incorporate or refer to any federal or state statute, and the CBA expressly limited the arbitrator to interpreting its own terms. As *Gardner-Denver* explains, these are grounds for refusing collateral estoppel effect to arbitrations of discrimination claims under CBA's as against lawsuits raising statutory discrimination claims.

This is not to say that the arbitration in this case can have no weight in resolving Camargo's FEHA suit. As *Gardner-Denver* explains, the weight properly accorded arbitrators' findings in subsequent suits under statutory law depends on a number of factors, including "the degree of procedural fairness in the arbitral forum, . . . and the special competence of particular arbitrators." (*Gardner-Denver, supra,* 415 U.S. at p. 60, fn. 21 [94 S.Ct. at p. 1025, 39 L.Ed.2d at p. 165].) As we have noted, the present record sheds little light on these matters. We therefore express no view on the weight to which the arbitrator's findings in this case may be entitled under the *Gardner-Denver* test. We hold only that, on the record presented on demurrer, defendants have not shown that the arbitrator's findings should collaterally estop Camargo's FEHA action.

The trial court erred by sustaining defendants' demurrer on the ground of collateral estoppel.

### III, IV*

. . . . . . . . . . . . . . . . . . . . . . . .

### Disposition

The judgment is affirmed as to defendants O'Dell, Beeson, and Dominisse. The judgment is further affirmed as to defendant CPCC with respect to

*See footnote, *ante,* page 995.

the dismissal of the third cause of action (intentional infliction of emotional distress). The judgment of dismissal is reversed as to defendant CPCC with respect to the first and second causes of action (sexual discrimination and sexual harassment). Defendants O'Dell, Beeson, and Dominisse shall recover their costs on appeal from plaintiff. Plaintiff shall recover her costs on appeal from defendant CPCC.

Raye, J., and Hull, J., concurred.

Respondents' petition for review by the Supreme Court was denied May 2, 2001.